THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PATRICK W. CONNOR, Appellant.

While under the section of the Penal Code (§ 278) defining the crime of rape, to constitute that crime the connection must be shown to have been effected against the will and consent of the female, save in the cases specified where she is incapable of giving consent, and while any voluntary submission will be construed as a consent, where it appears that the submission was produced by fear of great bodily harm which she had reasonable cause to believe would be inflicted, consent may not be implied.

The extent of resistance required to establish want of consent is governed by the circumstances of the case and the grounds for apprehending great bodily harm.

An assault committed by the sudden and unexpected exercise of overpowering force upon a timid and inexperienced girl, under circumstances indicating the power and will of the aggressor to effect his object, and an intention to use any means necessary to accomplish it, presents a case for the jury to say whether the fear, naturally inspired by such circumstances, had not taken away or impaired her ability to effectually resist the assault; and, therefore, the fact that she did not employ all the means of resistance in her power does not, as matter of law, establish that she did not resist to the extent of her then existing ability. All that is required of her is the greatest resistance of which she was, at the time and under the circumstances, capable.

(Argued March 19, 1891; decided April 14, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made April 18, 1890, which affirmed a judgment of the General Sessions of the Peace in and for the city and county of New York, entered upon a verdict convicting the defendant of the crime of rape.

The facts, so far as material, are stated in the opinion.

*Henry A. Gildersleeve* for appellant. The evidence was insufficient to warrant a conviction, because it did not show that the complainant resisted "to the utmost of her ability at the time and under the circumstances surrounding her." (*People* v. *Abbott*, 19 Wend. 192; *People* v. *Morrison*, 1 Park. 644; *People* v. *Dohring*, 59 N. Y. 374; *People* v. *Hulse*, 3 Hill, 316; *People* v. *Quinn*, 50 Barb. 128; Penal Code, § 278.; *Higgins* v. *People*, 58 N. Y. 377.) The court erred in its instruction to the jury concerning an alleged attempt to prove an alibi, because there was no evidence to which such an instruction was applicable. (*Richards* v. *Morgan*, 4 B. & S. 641.) The court erred in compelling the defendant to give his reason for not disclosing to the police authorities the defense which he set up at the trial. (Code Crim. Pro. § 196.) The court erred in permitting the defendant to be interrogated upon his reasons for refusing to permit the doctor to examine his linen. (Code Crim. Pro. §§ 172, 813; *People* v. *McCoy*, 45 How. Pr. 216.)

*McKenzie Semple* for respondents. The evidence of resistance was sufficient to warrant the submission of the issues to the jury. (*People* v. *Clemmons*, 3 N. Y. Cr. Rep. 565; *People* v. *Doring*, 59 N. Y. 383; *People* v. *Bowles*, 3 N. Y. Cr. Rep. 447.) The court did not err in allowing the district attorney, upon the cross-examination of the defendant, to elicit evidence tending to show that upon the preliminary examination before the police magistrate the defendant, in his defense, had introduced evidence tending to prove an alibi. (*Richards* v. *Morgan*, 4 B. & S. 641.)

RUGER, Ch. J. The defendant was tried at the General Sessions in New York and convicted of the crime of rape

on the body of a female named Minnie Heath. The course taken on the trial resulted in presenting but one disputed question of fact for the jury, which was, whether the connection, admitted to have taken place between the defendant and Minnie Heath, was effected by force alone, or was partially, or wholly, accomplished with her consent.

The jury, under a charge upon this question which has elicited the enconiums of the defendant's counsel, found that the connection was effected against the will and without the consent of the prosecutrix; and he appeals from the judgment entered upon the verdict, upon the ground that there was no evidence to sustain it; or rather that the jury were bound to infer consent, from the evidence. The prosecutrix and defendant are the only eye witnesses to the circumstances of the alleged connection, and their evidence conflicted on the material point of consent. The prosecutrix, a young, virtuous and, apparently, truthful girl, gave a consistent and probable account of the transaction and was supported in respect to her story by the material circumstances of the case. The defendant's testimony was unnatural and improbable and tended to show that he was a reckless and unprincipled man, capable of fabricating testimony to escape the consequences of his crime. It was not unnatural that, under these circumstances, the jury gave credit to the story of the girl and disbelieved the testimony of the defendant. This they had the right to do unless there were circumstances in the testimony of the prosecutrix so radically inconsistent with the theory of a constant and earnest resistance to the attempt of the defendant as to present a question of law. If her evidence showed the fact of non-consent and the exercise of all the means of resistance, which, under the circumstances of the case and the condition of her mental faculties, were within her power to make, the judgment cannot be disturbed.

Under the Revised Statutes, rape was defined to be the act of " carnally and unlawfully knowing any female child under the age of ten years," or " forcibly ravishing any woman of the age of ten years or upwards." (3 R. S. 2476 [7th ed.].) The

Penal Code defined with more care and precision the circumstances which should constitute the crime of rape, and included within its provisions cases which might not have been punishable under the prior statute. The crime is there defined to be " an act of sexual intercourse with a female, not the wife of the perpetrator, committed against her will and consent." The circumstances under which consent cannot be implied are expressed in six subdivisions, among which are those " when the female is under the age of ten years" (now sixteen, act of 1887); "when incapable of giving consent through idiocy or other unsoundness of mind; when her resistance is forcibly overcome, or is prevented by fear of immediate and great bodily harm which she has reasonable cause to believe will be inflicted upon her ; " and other cases not material to consider in the discussion of this case. (§ 278, Penal Code.) Such cases as come within these definitions, and such alone, now constitute the crime of rape. The codifiers, evidently, undertook to make a comprehensive definition of the crime, including all of the cases which should thereafter be punishable as rape, and those they define in language so plain and unambiguous, that the measure of resistance required of a female, subjected to felonious assault, cannot well be now the subject of misunderstanding. The substantial elements required by the Code to constitute the crime are, that the connection shall be effected against the will and consent of the female ; but such consent cannot be implied unless the case is brought within the meaning of some of the conditions named in the statute. Of course, any partial or voluntary submission to an assault will be construed now, as formerly, to amount to a consent; but when the submission is produced by the fear of great bodily harm, the necessity of showing the same degree of resistance required in other cases, is unnecessary.

It is thus seen that the extent of the resistance required of an assaulted female is governed by the circumstances of the case, and the grounds which she has for apprehending the infliction of great bodily harm. When an assault is committed by the sudden and unexpected exercise of overpowering force

upon a timid and inexperienced girl, under circumstances indicating the power and will of the aggressor to effect his object, and an intention to use any means necessary to accomplish it, it would seem to present a case for a jury to say whether the fear naturally inspired by such circumstances, had not taken away or impaired the ability of the assaulted party to make effectual resistance to the assault.

It is quite impossible to lay down any general rule which shall define the exact line of conduct which should be pursued by an assaulted female under all circumstances, as the power and strength of the aggressor, and the physical and mental ability of the female to interpose resistance to the unlawful assault, and the situation of the parties, must vary in each case. What would be the proper measure of resistance in one case would be inapplicable to another situation accompanied by differing circumstances. One person would be paralyzed by fear and rendered voiceless and helpless by circumstances which would only inspire another with higher courage, and greater strength of will, to resist an assault. A young and timid child might, we think, be easily overpowered and deprived of her virtue before she had an opportunity to recover her self-possession and realize her situation, and the necessity of exercising the utmost physical resistance in order to preserve her virtue. It would be unreasonable to require the same measure of resistance from such a person that would be expected from an older and more experienced woman, who was familiar with the springs and motives of human action and acquainted with the means necessary to be used to protect her person from violence.

It was said by Judge FOLGER in *People* v. *Dohring* (59 N. Y. 374, 383) that "of course, the phrase 'the utmost resistance' is a relative one; and the resistance may be more violent and prolonged by one woman than another, or in one set of attending physical circumstances than in another. In one case a woman may be surprised at the outset, and the mouth stopped so that she cannot scream, or her arms pinioned so that she cannot use them, or her body so pressed about and

upon that she cannot struggle. But whatever the circum-
stance may be, there must be the greatest effort of which she
is capable therein, to foil the pursuer and preserve the sanctity
of her person." It was held that the request to charge was
correct, as it limited the resistance to the extent of the ability
of the prosecutrix on the occasion in question and under the
circumstances in which she was then placed.

We do not see anything there decided which conflicts with
the conclusions we have reached in this case. If the evidence
warranted the jury in finding that a female subjected to such
an assault, as was shown in this case, had reason to fear great
bodily injury if she resisted to the extent of her ability, they
were justified in finding that the crime had been committed.
We think the evidence was of this character and brought
the case, not only within the meaning of the statute, but
also within the rule laid down in the *Dohring* case. The
proof showed that the defendant was a strong, robust man,
fifty years of age and engaged in managing an intelligence
office located on the corner of Forty-Seventh street and Tenth
avenue in the city of New York. The prosecutrix was a
young and virtuous girl, but little over sixteen years of age,
who had come to New York from the country, a short time
before the commission of the alleged crime, to find employment
in some domestic capacity. She was staying, temporarily, with
an aunt near Tenth avenue and near the defendant's place of
business, and, not being successful in securing employment by
her own efforts, on the 6th day of December, 1888, went to
the office of the defendant and solicited his aid in getting a
situation. Thereupon, he executed the customary contract
with her, by which, for a consideration then paid him, he
engaged to find her a situation as a domestic servant within
thirty days, provided she remained at the office during business
hours, at least four days in the week. She, with a number of
other females, remained in such office the required period on
the sixth and seventh days of December. On the latter day,
as the other girls were leaving the office to go home at the
accustomed hour, about half-past three o'clock in the afternoon,

the defendant induced the prosecutrix by artifice to consent to remain until after four o'clock. The other inmates of the office having left and the prosecutrix being unwilling, for some reason, to remain longer, about twenty minutes to four, notified the defendant that she would not stay longer than four o'clock, in any event. The defendant was then in the office alone and as the girl made this announcement immediately locked the outer door of the office and drew down the shades of the windows, seized the girl and lifting her from the floor, bore her through an adjoining room, in which the girls were accustomed to sit, into the last room of the suite. He then laid her on her back upon a long bench, holding her down by force, and getting upon her remained there until he had accomplished his purpose. The whole transaction occupied less than five minutes and when it was over the defendant immediately left the room and the building, leaving the girl alone.

Immediately upon her release she followed the defendant out of the building and went to the home of her aunt, to whom she related the circumstances of the assault. She was then hysterical and in tears; her hair was dishevelled and her drawers, stained with fresh blood, were torn so as to render access to her person possible. A surgical examination of the girl made shortly thereafter revealed that the hymen had been recently ruptured, and her private parts were lacerated and bleeding. This prosecution was immediately instituted, and the defendant arrested before five o'clock of the same day. The prosecutrix testified that she struggled with defendant and used all her efforts to get away from him from the time he seized her until the contest was over; that she used her hands and feet and continually requested him to release her and let her go; that she did not halloo because she was too frightened to do so, and that she was in a dazed condition. We think there was nothing in this evidence that tended to show any relaxation of a purpose to resist the efforts of the defendant to deflour her person, and that the verdict of the jury was sustained by the evidence.

The defendant was a man of mature years and, apparently,

of fair intelligence, and was engaged in a respectable business. The sudden exhibition by such a man of ungovernable passion and criminal design, with a contempt for the restraints which the law and decency impose upon all persons, could not fail to inspire a timid girl with feelings of alarm and consternation. The brutality and violence exhibited in this case were quite sufficient to engender that degree of fear requisite to confuse the mind and paralyze the efforts of his victim to free herself from the grasp of her assailant. The relations existing between the prosecutrix and the defendant, her dependence upon his good will for the means of earning a livelihood, naturally tended to disarm any suspicion of violence from him, and induced the belief that he would be influenced by her supplications and show some regard to her wishes. The fact that the prosecutrix did not, in the limited time allowed her, employ all the means in her power to resist the assault, does not, as matter of law, prove that she did not resist to the extent of her existing ability.

No other point requiring serious consideration was raised on the argument before us.

For the reasons stated, as well as those so clearly expressed in the opinion below, we think the judgment of conviction should be affirmed.

All concur.

Judgment affirmed.