GERTRUDE DEAN, an Infant, etc., Respondent, *v.* MINERS
RAPLEE, Appellant.

In an action to recover damages for an assault which, as set forth in the
complaint, was committed in such manner and under such circum-
stances as to constitute the crime of rape, these facts appeared: In
April, 1885, defendant took the plaintiff, who was an orphan fourteen
years of age, to his home under an arrangement with her and her rela-
tives, with whom she was then living, that he would board, clothe and
educate her; she to become a member of his family, to perform such
duties and receive such care and attention as a girl of her age would be
entitled to receive from parents in the same condition of life. About a
year thereafter, as plaintiff testified, defendant committed an assault
upon her in a barn, where they were alone together, and had connection
with her without her consent; that she begged him to let her go, asked
him to desist, and resisted him to the best of her ability; that after the
outrage he told her to stop crying, go to the house and keep still
about it, and if she told any one it would be the worse for her; that on
several subsequent occasions within a year thereafter he committed
substantially similar assaults, he at each time commanding her never
to tell and threatening her if she did, but did not threaten to do her any
bodily harm. She made no outcry on any occasion, and it appeared that
an outcry, if made, would have been heard by some one. Plaintiff was
a slight, nervous girl; defendant a strong, powerful man; and the
evidence justified a finding that he exercised a great influence and con-
trol over her will. In consequence of the assaults she became ill, having
nervous spasms, etc. The action was commenced about three years after
the last assault, and not until about the time of its commencement did
plaintiff disclose the facts alleged. *Held* (PECKHAM and BARTLETT,
JJ., dissenting), that while, in order to maintain the action, it was
necessary to satisfy the jury that if defendant had the criminal connec-
tion with plaintiff it was accompanied with intent on his part to effect
that purpose in defiance of all resistance and without her consent and
against her will, and that she resisted to the best of her ability, under

all the circumstances, the evidence was sufficient to authorize the submission of these questions to the jury; and so, that with its determination this court could not interfere.

Reported below,·75 Hun, 389.

(Argued March 1, 1895; decided March 12, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 18, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The nature of the ·action and the facts, so far as material, are stated in the opinion.

*Elmer E. Charles* for appellant. On a review cases will be considered on the theory on which they were tried. (*Dauscha* v. *Brower*, 72 Hun, 221–224; *Salisbury* v. *Howe*, 87 N. Y. 128; *Storrs* v. *Flint*, 14 J. & S. 498–519; *Baird* v. *Mayor*, 96 N. Y. 603; *Stapenhorst* v. *Wolff*, 65 id. 597; *Wright* v. *Delafield*, 25 id. 266.) The motion for a non-suit made by the defendant should have been granted. (*Young* v. *Johnson*, 46 Hun, 164; 123 N. Y. 226; *Crossman* v. *Bradley*, 53 Barb. 125; *People* v. *Morrison*, 1 Park. Cr. Rep. 625, 643; *People* v. *Loftus*, 34· N. Y. S. R. 525, 527; *People* v. *Hulse*, 3 Hill, 309, 316, 317; *People* v. *Quinn*, 50 Barb. 132; *Reynolds* v. *People*, 41 How. Pr. 179, 187; *People* v. *O'Sullivan*, 104 N. Y. 481–485.) The plaintiff did not resist to the extent of her ability, but on the contrary "protesting she would ne'er consent, consented." She made no outcry at the time. She made no complaint of the alleged outrages until after she returned from Connecticut, more than three years after the alleged assaults. (*People* v. *Dohring*, 59 N. Y. 385; *People* v. *Hulse*, 3 Hill, 316.) The evidence fails to show that there was any force used by the defendant to accomplish his purpose, and shows that none was attempted or intended. (*People* v. *Kirwin*, 51 N. Y. S. R. 299.) The verdict· was against the evidence. (*Kummer* v. *C. & T. S. R. R. Co.*, 50 N. Y. S. R. 332; *Dwight* v. *G. Ins. Co.*, 103 N. Y. 341.)

*Eugene W. Bartlett* for respondent.    The question involved was solely one of fact for the determination of the jury. (*People ex rel.* v. *Special Sessions*, 18 Hun, 331 ; *Nichols'* *Case*, Russell & Ry. 130 ; Roscoe on Crim. Ev. [5th Am. ed.] 287 ; *Day's Case*, 38 E. C. L. [9 C. & P. 722] 419 ; *Regina* v. *Case*, 1 Eng. Law & Eq. 544 ; *People* v. *Clemens*, 37 Hun, 580 ; *Reg.* v. *Hallett*, 9 Car. & Payne, 748 ; *Don Moran* v. *People*, 25 Mich. 356 ; 12 Am. Rep. 283 ; *Whitaker* v. *State*, 50 Wis. 518 ; 36 Am. Rep. 856 ; *Anderson* v. *State*, 104 Ind. 467 ; *Sidley* v. *State*, 4 id. 580 ; *Pomeroy* v. *State*, 94 id. 95 ; *Com.* v. *McDonald*, 110 Mass. 405 ; 2 Bish. Cr. Law, § 1122 ; *Huber* v. *State*, 126 Ind. 185 ; *Queen* v. *Flattery*, L. R. [22 Q. B. Div.] 410 ; *Hayes* v. *People*, 1 Hill, 352 ; *People* v. *Bransby*, 32 N. Y. 525 ; *People* v. *Bowles*, 3 N. Y. Cr. R. 447 ; *Higgins* v. *People*, 58 N. Y. 379 ; *People* v. *Connor*, 126 id. 278.)    None of the objections to the admission or rejection of evidence, the charge or refusals to charge, were well taken.    (*Greenleaf* v. *People*, 75 N. Y. 90.)

O'BRIEN, J.    This action was brought to recover damages for an assault by the defendant upon the plaintiff, committed in such manner and under such circumstances as to constitute the offense of rape.    It was alleged that in the month of March, 1886, and at different times during the following year, the defendant assaulted the plaintiff, and by force and threats of personal violence compelled the plaintiff to have sexual intercourse with him, without her consent and against her will. It appeared that in the month of April, 1885, when the plaintiff was but fourteen years of age, the defendant, who then had no children, took the plaintiff, who was an orphan, without father or mother, to his house, under an arrangement with her and some of her relatives that he would board, clothe and educate her ; that she should become a member of his family, performing such duties and receiving such care and attention as a girl of her age would be entitled to receive from parents in the same condition in life.    The arrangement, as testified to, would justify expectations and hopes on the part of the plaintiff of becom-

ing the heir of defendant's property, and it appears that he was a man of considerable means.

The relations which the parties occupied to each other were not those of master and servant, but rather that of parent and child. The plaintiff was subject to such authority on the part of the defendant, and was accustomed to render such obedience to his commands as is common and usual where that relation exists. The first assault, it is claimed, was committed about a year after the parties entered into these relations. The fact itself, and all the attending circumstances, depend mainly, if not entirely, upon the testimony of the plaintiff. Her evidence is that she was sent to the horse barn to look for eggs, and shortly after she got there and commenced the search for eggs the defendant appeared in the barn and told her to go up into the loft and look there, which order she obeyed. After being there about five minutes and not finding any eggs, she started to go down, but seeing the defendant coming up the stairs she stepped back, waiting for him to come up until he reached the landing. He then inquired if she had found any eggs, and she replied that she had not. He then said that she had better put on her spectacles, and, stepping up to her put his arm around her, his hand under her chin, and, after kissing her several times, commenced to push her back upon the hay. She asked what he was going to do and told him to stop, and he told her to keep still, that he would not hurt her, and then pushed her back upon the hay and had connection with her, she all the time begging him to let her go, asking him to desist, and trying to push him away, and, as she says, in general terms, resisting him to the best of her ability. After the outrage she says that he lifted her up, told her to stop crying, go to the house and keep still about it, and that if she told it to any one it would be the worse for her. She states that on six or seven subsequent occasions, during the year following, assaults of substantially the same character, and under similar circumstances, were repeated. On two of these occasions, after having seized and thrown her down, he desisted from his purpose at one time, as she says, through fear of exposure

by some one approaching, and at another on account of her
condition, having been suddenly seized at the time of the assault
with what is described as some spasmodic nervous affliction as
the result.    The evidence tended to show that the plaintiff
was a slight nervous girl, and that after the fourth or fifth
occasion, about July or August of the year, she became ill
from the effects of the previous assaults.    That this illness
manifested itself in nervous spasms and in other ways which
experts attempted to trace to the treatment she had previously
suffered at the hands of the defendant.    The description here
given of the circumstances of the first assault will apply for
all practical purposes to the others.    She made no outcry on
any occasion, though she swears that the offense was com-
mitted against her will and against all the resistance she could
make and without her consent.    The place where these
assaults were made was, as she testified, when the parties were
alone in the barn where the plaintiff had been sent or had
been called on some errand, but on one occasion it took place
at a considerable distance from the house in an open field.
The fair conclusion from all the evidence is, however, that an
outcry if made by the plaintiff would have been heard by
some one.    This action was commenced some three years after
the last assault, and not till about the time of the bringing of
the suit did the plaintiff disclose the facts here related.
The defendant was a strong, powerful man, and all the circum-
stances justified the jury in believing that he exercised great
influence and control over her will, and it appeared that at the
time of each assault he commanded her never to tell what
had taken place, threatening her if she did, though none of the
threats were of a character to warrant the belief that any
bodily harm was intended.

     A motion for a non-suit and for a dismissal of the complaint
was denied and the case was submitted to the jury and a ver-
dict found for the plaintiff.    The General Term has affirmed
the judgment.

     The learned trial judge charged the jury that the plaintiff
in order to maintain the action must satisfy them, from all the

proofs, that if the defendant had criminal connection with her, that it was accomplished with the intent on his part to effect his purpose in defiance of all resistance, and that it took place without her consent, against her will and that she resisted to the best of her ability, under all the circumstances.

There are cases that seem to hold that a civil action of this kind based upon a charge such as is set forth in the complaint in this action may be maintained upon evidence such as might not be sufficient to warrant a conviction upon a criminal charge of rape. Some of these cases are referred to in the opinion of the learned judge in the court below, but it is unnecessary to comment upon them since we are of the opinion that the judgment in this case must be upheld, if at all, upon the view of the law given by the trial judge to the jury. Moreover, we think that this is the correct rule. The principle was necessarily invo'lved in the case of *Young* v. *Johnson* (46 Hun, 164), which was affirmed in this court (123 N. Y. 226). The point was not discussed in the opinion when that case was here, but the decision covered the question.

Assuming this to be a correct statement of the law applicable to cases of this character, the question now arises whether there was in this case any evidence to submit to the jury. It is not often that such an assault is or can be described by a female with that complete fullness of detail with respect to every word spoken or every fact and circumstance that may enter into the questions of consent or resistance. When the proof is given, as it sometimes is in general terms, the jury must still be satisfied that there was no consent, and that resistance was made to the extent of the woman's ability. What that ability was must in many cases depend not only upon her strength and power to defend herself or make herself heard, but also upon the element of fear when it exists. The age, strength and physical appearance of the parties, with the manner in which they testify, are elements of some importance which the jury may consider with all the other facts. The relation which the parties bear to each other, as in this case, may also be considered. Where on one side we

find extreme youth, inexperience and dependence united with the principle of fear and obedience, and on the other, mature age, great physical power and dominating influence and control over the movements and will of another, the question of consent and resistance must be determined with reference to these conditions.

When such a case arises who is to determine when, as in this case, the girl, in stating the occurrence, states that she did not consent and did resist to the best of her ability, whether she tells the truth or not? Can this court, after the jury have accepted the plaintiff's version of the transaction and the General Term has approved the verdict, say, as matter of law, that there was no evidence for the consideration of the jury? This, I think, would be to transcend the limits of our jurisdiction as a court of law, without power to review disputed facts. Whatever we might think of this case, if we had the power to determine the facts, I think we cannot say, as matter of law, that it was impossible for the jury to take the view of the case that they did.

This court said, in the case of *People* v. *Conner* (126 N. Y. 278): "When an assault is committed by the sudden and unexpected exercise of overpowering force, upon a timid and inexperienced girl, under circumstances indicating power and will of the aggressor to effect his object, and an intention to use any means necessary to accomplish it, it would seem to present a case for the jury to say whether the fear naturally inspired by such circumstances had not taken away or impaired the ability of the assaulted party to make effectual resistance to the assault."

If we should attempt to determine the facts in the case ourselves, it seems to me that we would be obliged to admit, as a first step, that there was some evidence on the part of the plaintiff for our consideration, though we might not be inclined to believe it. But the plaintiff's credibility was for the jury. If she told the truth there was evidence upon which to base the verdict.

We would have very much less hesitation in affirming this

judgment but for the fact that there appears in the record two letters written by the plaintiff about a month after the date of the first assault to a female friend, who produced them at the trial. It is impossible to read these gossiping letters, written from the defendant's house, without being impressed with the fact that this girl had then been corrupted, whether by the defendant or by some other evil influence, it is impossible to say. The defendant's plan of defense necessarily precluded him from giving any light on that point. On the stand he denied the charge in general and in every particular, and hence he had to satisfy the jury that the plaintiff's story in regard to these several outrages upon her person, in which time, place and circumstances were given, were, after all, nothing but pure invention, and that her testimony from beginning to end did not contain even a single element of truth. If it was our duty to try the facts and declare where the truth lay, instead of reviewing the questions of law, we might hesitate before accepting either version of the case. On the plaintiff's evidence she never made on her part the slightest advances that would indicate consent. The case, as it stands, resolves itself into a question of resistance on her part to the best of her ability, and that, we think, was, under the peculiar circumstances of the case, for the jury.

Since the amendment of the Penal Code (§ 278) by ch. 693 of the Laws of 1887, the acts charged against the defendant, when committed upon a female under sixteen years of age, would amount to rape; and while the present case must stand upon the law as it existed when the alleged assaults were made, yet the reasons which induced the legislature to change the law cannot be ignored in our review of the case. That act eliminated the question of consent or resistance from the case of an assault upon a female under that age on the trial of a criminal charge. The amendment was evidently based upon the principle that consent or non-resistance on the part of a girl of that age was not to be understood in the same way as in the case of like acts committed upon a woman of more mature years. The jury could have taken the same view of

this case.   The circumstances of the various assaults extending over the period of a year, and the failure of the girl to make any disclosures for so long a time, tended to cast suspicion upon her testimony upon the point of consent and resistance.   If this was a criminal case where the prosecution is bound to prove the charge beyond a reasonable doubt, the appeal would be entitled to prevail.   But here a preponderance of proof is sufficient.   (*People* v. *Briggs*, 114 N. Y. 56.) Whether there was such a preponderance depended to a great extent upon the credibility to be given to the plaintiff's testimony, and this was a question for the jury.   It was also a question that the trial judge could have dealt with after the verdict or the General Term upon appeal.   The case having passed these stages, this court has no power to set aside the verdict unless it can say either that there is no evidence at all or not more than a scintilla.   We cannot do that without · assuming functions that have not been conferred upon the court, and so, we think the judgment must be affirmed.

ANDREWS, Ch. J., FINCH and GRAY, JJ., concur; PECKHAM and BARTLETT, JJ., dissent on the ground that there was not sufficient evidence in regard to the girl's resistance to go to the jury; HAIGHT, J., not sitting.

Judgment affirmed.