BOYLES v. BLANKENHORN. (No. 68/49.)

(Supreme Court, Appellate Division, Third Department. May 7, 1915.)

1. RAPE ☞65—CIVIL ACTION—STATUTORY RAPE—RESISTANCE.
   Irrespective of resistance, plaintiff may recover damages for defendant's intercourse with her, which, under Penal Law (Consol. Laws, c. 40) § 2010, because of her youth, constituted rape.
   [Ed. Note.—For other cases, see Rape, Cent. Dig. § 106; Dec. Dig. ☞65.]

2. APPEAL AND ERROR ☞1033—HARMLESS ERROR.
   The evidence in a civil action showing statutory rape of plaintiff by defendant, it cannot avail him on appeal that the trial was on the theory, too favorable to him, that resistance was necessary, and that the evidence thereof was insufficient.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. ☞1033.]
   Smith, P. J., and Howard, J., dissenting.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, Albany County.

Action by Ella May Boyles, an infant, by Allen Deyo, her guardian ad litem, against Charles Blankenhorn. From a judgment for plaintiff for $1,315, damages and costs, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Fenwick & Devoe, of Schenectady (Henry J. Crawford, of Albany, of counsel), for appellant.

Smith O'Brien, of Albany (Richard O. Bassett, of Albany, of counsel), for respondent.

JOHN M. KELLOGG, J. The complaint alleged in substance that the infant plaintiff was an unmarried woman of the age of 16 years on the 15th day of December, 1913, and that on the 2d day of July, 1913, the defendant with force and violence forcibly made an indecent assault upon her, and forcibly debauched and ravished and carnally knew her, whereby she became pregnant and sick with child. She proved her age as alleged, and that the defendant debauched her and made her sick with child. She swore the defendant had intercourse with her against her will and with force. Reversal of the judgment is now sought on the ground that she did not use resistance enough to show that the act was accomplished by force.

If she had been of full age, there might be some question whether the resistance shown was enough to establish that rape was committed upon her. Under section 2010 of the Penal Law, a man who has sexual intercourse with a female, who is under the age of 18 years and not his wife, is guilty of the crime of rape. This statute is based upon the theory that a girl under 18 years of age is incapable of consenting to the act. The same may be said of the statute defining abduction (section 70 of the Penal Law), which makes it criminal to use such a girl for the purpose of sexual intercourse "or without the consent of her father, mother, guardian or other person having legal charge of her person, for the purpose of marriage." In Dean v. Raplee, 145 N. Y. 319, 326, 39 N. E. 952, 954, the court, referring to a similar statute, says:

"That act eliminated the question of consent or resistance from the case of an assault upon a female under that age on the trial of a criminal charge. The amendment was evidently based upon the principle that consent or non-resistance upon the part of a girl of that age was not to be understood in the same way as in the case of like acts committed upon a woman of more mature years."

In speaking of the provision of the Labor Law which prohibits the employment of children under 14 years of age, in Marino v. Lehmaier, 173 N. Y. 530, 534, 66 N. E. 572, 61 L. R. A. 811, approved in Koester v. Rochester Candy Works, 194 N. Y. 92, 95, 87 N. E. 77, 78 (19 L. R. A. [N. S.] 783, 16 Ann. Cas. 589), the court says:

"We think it is very evident that these reasons induced the Legislature to establish definitely an age limit under which children shall not be employed in factories; and, to our minds, the statute in effect declares that a child under the age specified presumably does not possess the judgment, discretion, care, and caution necessary for the engagement in such a dangerous vocation,

and is therefore not, as a matter of law, chargeable with contributory negligence, or with having assumed the risks of the employment in such occupation."

The defendant committed rape upon the plaintiff, and she is entitled to recover damages on account of the injuries she has sustained by his criminal act. The mere fact that she attempted to prove force and resistance does not affect the validity of the verdict. The fact that the case was tried on too favorable a theory, so far as the defendant is concerned, cannot benefit him here. Perhaps the evidence did not show such a resistance as would be required of a woman of mature age to establish the crime of rape upon her. The jury has found that plaintiff did not consent, and that the violation of her person was illegal. The verdict is well sustained by the evidence. I favor an affirmance.

Judgment and order affirmed, with costs.

LYON and WOODWARD, JJ., concur.

HOWARD, J. (dissenting). The complainant in this action alleges:

"That on or about the 2d day of July, 1913, at the said town of Bethlehem, the defendant with force and violence ill-treated the plaintiff, said Ella M. Boyles, and made an indecent assault upon her, and then and there forcibly debauched and ravished and carnally knew her, whereby she became pregnant and sick with child, and has so remained ever since."

The answer absolutely denies this allegation, and upon the issue thus joined the parties went to trial. At the time of the alleged assault the plaintiff was about 15 years and 7 months old; the defendant was 26. They were both unmarried. They were neighbors and friends, and the plaintiff visited frequently at the defendant's home. These relations had existed for 10 years. On an occasion only a few days previous to the alleged assault the defendant had taken the plaintiff on a ride to a neighboring village, and had hugged and kissed her and endeavored to induce her to permit him to have sexual intercourse with her. He attempted on that occasion to put his hand under her clothes, but she forced him to desist from his purpose by threatening to "holler." On the night in question (July 5, 1913) the plaintiff had been visiting at the defendant's house. Between 9 and 10 o'clock in the evening he accompanied her home; that is, to the house of John Babcock, where she was employed as a domestic. Mr. Babcock and his mother and sister were in the house at the time. After they reached the Babcock residence, they sat down on the "side stoop."

The foregoing narration of facts is taken from the plaintiff's testimony, and inasmuch as the verdict in this case rests exclusively upon the uncorroborated testimony of the plaintiff, her account of the alleged rape, given on the direct examination, is here quoted verbatim.

"Q. Now, go on in your own way and tell this jury just what happened there. A. We got on the side piazza, and we sat down on the stoop. We sat there talking a little while, about 15 minutes or so, and then he was going to do the same thing as he did coming from Cedar Hill. Q. Just what he did and what he said. A. Well, he asked me again if there was anything doing, and I told him, 'No.' He said, 'Well, there is,' and I said, 'Well, there ain't,' and he took and threw me over on the stoop and did it. Q. What did he do as he threw you over on the stoop? How did he throw you on the stoop? Describe how that was done. A. He took and pushed me over on the stoop. Q. Then what did he do, after he pushed you over on the stoop? A. He held

me down. Q. How? A. Well, I had my arms crossed on my chest and he laid right on my arms. Q. When you say that he did it there, you know now what I mean. You mean that he had sexual intercourse with you, do you? A. Yes, sir. Q. Then what did he do after that was over? A. He went home. Q. While he was doing that, what did you do? A. I tried to get up, but I couldn't. Q. How long did he stay there after that? A. He went right home."

With slight variations and some amplification, elicited by the cross-examination, this constitutes the evidence, and all of the evidence, on which this judgment is based.

· Our ordinary conception of rape is such that, when we are told that a virtuous woman has found herself in the clutch of a ravisher, we expect also to be told that a desperate, furious struggle has ensued—a struggle continuing to the last moment of consciousness. Screams and outcries and scratching and violent efforts to resist occur to our mind. Such would be the character of resistance which we would expect of an outraged woman battling for honor, chastity, and virtue. But the plaintiff in this case fought no such battle. She made no outcry; she did not shout for help or make any noise or attempt in any manner to enlist the assistance of the household. Three people were in the house, within a few feet of the scene of the alleged crime, and yet the plaintiff submitted to this debauchery of her person without demonstration, noise, or outcry. Her reason for not making an alarm and shouting for assistance was because she did not wish to wake up the people in the house or let them know that she was being raped; that is, under the circumstances, she preferred to be ravished rather than to be rescued. Her nails and hands, the weapons given to her by nature with which to defend her virtue, she did not use; for, with her arms crossed upon her breast, she endured without remonstrance this outrage upon her honor. Had a tramp sprung upon the stoop and attempted to defile her, would she not have fought furiously and cried out loudly? To the uttermost limits of her strength, with muscle and voice, she would, beyond doubt, have resisted such a violation of her person. But from her direct examination it is perfectly apparent that she offered no real opposition to the lascivious approaches of the defendant. Neither did she moan nor lament nor faint, after the ravisher had left her and thoughts of the atrocious character of the crime flooded in upon her. Neither did she disclose the outrage to her employers, and cry out for the immediate arrest of the debaucher; but she went in the house quietly, making no complaint, and went to bed. She concealed her shame for nearly four weeks, and she displayed no animosity towards the author of her ruin. One would have supposed that this man, who had pillaged the plaintiff of her virtue, would have been hideous in her eyes, and that his brutish lust and rapacity would have filled her soul with loathing and hatred towards him. But she took no such view of the man who had befouled her. She continued for weeks after the rape to visit at his house and talk to him—the house of the beast who had perpetrated this monstrous crime upon her—a crime, in the eyes of pure women, more heinous than murder. Subsequently she gave birth to a child.

The plaintiff's story of her encounter with the defendant is so

inconsistent with the doctrine of rape, so inconsistent with the common conception of rape, and with the law of rape, that the judgment against the defendant ought not to stand. In the complaint the plaintiff has alleged an assault; she has alleged force and violence—that is the gist of her action. Unless there was force and violence, there was no ravishment. If it was persuasion, instead of violence, or inclination, instead of force, which overpowered the plaintiff, then, under the common law, she was neither assaulted nor raped, and cannot recover. It was not sufficient for her to refuse with her lips; she should have resisted with her hands, and with all her faculties and strength. To cross her arms upon her breast and make nominal resistance was not the resistance demanded by the law, nor the resistance expected of modesty and virginity. A passive resistance, which in effect is consent, is not sufficient. In actions of this character this has always been the law; but the Court of Appeals in Dean v. Raplee, 145 N. Y. 319, 39 N. E. 952 (a case in which the victim was about 15 years of age), in approving of the charge of the trial judge, used this language:

"The learned trial judge charged the jury that the plaintiff, in order to maintain the action, must satisfy them, from all the proofs, that if the defendant had criminal connection with her, that it was accomplished with the intent on his part to effect his purpose in defiance of all resistance, and that it took place without her consent, against her will, and that she resisted to the best of her ability, under all the circumstances. * * * Moreover, we think that this is the correct rule."

It has been argued that the degree of resistance required from an assaulted woman depends upon circumstances, and that a young and timid female, attacked by a ravisher, might be so stricken with terror as to be unable to resist. That is undoubtedly true; however, in considering that contention, it should be remembered that, while the plaintiff was young, she may have been also wise. She was brought up in a country tavern, and it is reasonable to assume that she was much more sophisticated than a maiden reared in the seclusion of a private household.

The proof in this case utterly fails to show that resistance on the part of the plaintiff required by the law, and therefore the verdict of the jury should be set aside. I thoroughly comprehend the force of the rule that verdicts should not be lightly disturbed, and that unless the conclusion of the jury has been induced by ulterior considerations it should be permitted to stand. But I think in this instance that it must have been so induced, and that favor, passion, prejudice, or sympathy—probably the latter—operated upon the jury to the detriment of the defendant.

Although the plaintiff does not seriously present any such contention, or ask to have her judgment affirmed on any such grounds, nevertheless the majority of this court insists that, even though the plaintiff gave her consent to the ravishment of which she complains, she has, notwithstanding such acquiescence, established her cause of action, having been, at the time of the act, under the age at which she could give her *legal* consent. Under section 2010 of the Penal Law,

if the defendant did have carnal connection with the plaintiff on July 5, 1913, she being then less than 18 years of age, he was guilty of rape in the second degree, although she consented. But this statute in no manner bears upon the question presented by this appeal. No such issue was presented by the pleadings, and no such issue was tried in the court below; therefore no such question is here for review. Marion v. Coon Constructing Co., 157 App. Div. 95, 141 N. Y. Supp. 647; Hammond v. Union Bag & Paper Co., 136 App. Div. 100, 120 N. Y. Supp. 652; Mulligan v. McDonald, 135 App. Div. 536, 120 N. Y. Supp. 522.

It would be manifestly unjust to the defendant to sustain this judgment, even were we at liberty to do so, upon the theory that the plaintiff was incapable, in the eyes of the law, of giving her consent; for, had the matter been presented to the jury in that aspect, their verdict might have been quite different. It may be fairly assumed that the jury were shocked and disgusted with the supposed brutality of the defendant, and that their indignation was, to some extent, voiced in their verdict; but forcible and violent ravishment is the antithesis of willingness and consent, and, had the jury been told that the girl, although under the law unable to consent, had in fact consented, they might have looked with some degree of compassion upon the trespass of the defendant. And it should also be noted that the law, which decrees that intercourse with a female under the age of 18 constitutes rape, also decrees that there can be no verdict against the defendant unless the evidence of the female is corroborated. Even if it were possible to accomplish such an incongruity, it would have been wholly subversive of the defendant's rights to have applied the Penal Law of rape to his case without having also applied the Penal Law of evidence. If this highly penal statute, in derogation of the common law and contrary to the impulses of nature, is to be transplanted by the courts into civil actions, the rules of evidence applicable thereto must also be transplanted.

The defendant very vigorously and emphatically denies the whole transaction at the Babcock house; and he denies that he was with the plaintiff on that occasion, and denies that he saw her on the evening of July 5th. And he presents an abundance of every respectable evidence to corroborate his own testimony on this subject. A reversal of this judgment, however, should not be placed on the grounds that the defendant has established an alibi; but, assuming the plaintiff's description of the alleged rape to be true and to be just as she relates it, she has, nevertheless, wholly failed to present proof of that resistance contemplated by the law, and has therefore failed to establish her alleged cause of action. Therefore the judgment should be reversed, and a new trial granted.

SMITH, P. J., concurs.