# Wytheville

WILLIAM PARSONS V. GRACE R. PARKER, AN INFANT, ETC.

June 15, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Chinn, JJ.

The opinion states the case.

*J. Brooks Mapp, E. A. Ames, Jr.,* and *Warner Ames,* for the plaintiff in error.

*Quinton G. Nottingham* and *James E. Heath,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action of trespass on the case was brought by the next friend of Grace Parker, an infant, against William Parsons, to recover damages for having carnal knowledge of the plaintiff, she then being under the age of sixteen years, to-wit, in the fifteenth year of her age. There was a verdict for the plaintiff in the sum of $15,000, and over the objection of the defendant the trial court entered judgment thereon. The declaration alleges:

"That the said defendant wrongfully and wickedly contriving and intending to injure the said plaintiff, heretofore, to-wit, on the ........ day of February, 1929, and on divers other days and times during that month, debauched and carnally used the said Grace Rebecca Parker, she being then and there in the fifteenth year of her age, having been born on the 6th day of December, 1914; whereby the said Grace Rebecca Parker became pregnant, and as a result thereof, on the 9th day of November, 1929, gave birth to a male child, so begotten by the said defendant. To the damage of the said plaintiff seventy-five thousand ($75,000.00).

"Therefore she brings this *suite.*"

The defendant filed a demurrer to the declaration, challenging the right of the plaintiff to bring the action,

and relied upon this ground of demurrer: "Because this action cannot be maintained in Virginia by the plaintiff or by the plaintiff suing by her next friend."

The action of the court in overruling the demurrer is assigned as error .

The question raised by the demurrer is one of first impression in this court, and, succinctly stated, is: Under our statute, can a girl in the fifteenth year of her age consent to the act of sexual intercourse with an adult male and then maintain an action for her debauchment?

Section 4414 of the Code (as amended by Acts 1924, ch. 443), reads in part as follows:

"If any person carnally know a female of sixteen years of age or more against her will, by force, or carnally know a female child under that age or a female inmate of any hospital for the insane, who has been adjudged a lunatic, or any female who is an inmate or pupil of an institution for deaf, dumb, blind, feeble-minded, or epileptic persons, he shall, in the discretion of the court or jury be punished with death, or confinement in the penitentiary for life, or for any term not less than five years. But if such female child be between the ages of fourteen and sixteen years and not an inmate or pupil of such institutions hereinbefore mentioned, and consents to the carnal knowledge, the punishment shall be confinement in the penitentiary not less than one nor more than twenty years.

"If the carnal knowledge be with the consent of the female between the ages of fourteen and sixteen years, and the female be not an inmate of such institution as heretofore mentioned, the subsequent marriage may be pleaded to any indictment found against accused; * * *."

While the terms of the statute vary the degree of punishment when the female consents to the sexual act, to have carnal knowledge of a female under the age of consent is, under the express terms thereof, made statutory rape. The purpose of the statute is to prohibit a

girl, while passing through the years of adolescence, from voluntarily becoming the author of her own shame, and to set her apart from the lusts of men. The effect of the statute is to render her in law incapable of giving her consent to the sexual act, and to punish the man for gratifying his passion with one who in law is incapable of becoming the medium through which the lecherous desire is appeased. The mere act of illicit intercourse constitutes an assault for which the law provides redress sounding in damages.

In *Buzzard's Case,* 134 Va. 641, 114 S. E. 664, 667, this court, speaking through Judge Kelly, held that a girl under the age of fifteen (now sixteen) cannot legally consent to the act, and constructive force is present, even though she does in fact consent.

In 22 R. C. L. page 1237, we read: "Where a female is capable of consenting to sexual intercourse, and does in fact consent thereto, she is thereby barred from recovery in a civil suit against the person with whom the act is committed. The maxim *volenti non fit injuria* does not, however, apply where a female of feeble mind or under the age of consent gives her consent to an act of intercourse, and one committing the crime known as statutory rape (even with the actual consent of the female) is liable in a civil action."

In *Gaither* v. *Meacham,* 214 Ala. 343, 108 So. 2, 45 A. L. R. page 778, the court in construing a statute somewhat similar to our statute, said: "This is a civil suit in damages for having carnal knowledge of a girl over twelve and under sixteen years of age. The controlling question is whether consent of a girl fifteen years of age to enter into sexual intercourse with a man is, under our law, a defense to such action.

" 'Any person who has carnal knowledge of any girl over twelve and under sixteen years of age, or abuses such girl in the attempt to have carnal knowledge of her, must, on conviction, be punished at the discretion of the

jury, by imprisonment in the penitentiary for not less than two nor more than ten years. This section, however, shall not apply to boys under sixteen years of age.' Code, section 5411.

"The same act committed upon a girl under twelve years of age is made capital felony. Code section 5410. The statute is criminal. The complaint sets up the same facts made criminal by statute, but is not founded on the statute as such. The theory of the suit is that the statute raises the age of the consent, negatives any possible consent in law, and renders the man guilty of an unlawful, felonious assault upon the girl, for which he becomes liable in a civil action of damages upon common law principles. The case is of first impression in this court. The same question has been decided in the following States: Oregon: *Hough* v. *Iderhoff*, 69 Or. 568, 139 Pac. 931, 51 L. R. A. (N. S.) 982, Ann. Cas. 1916A, 247. Oklahoma: *Priboth* v. *Haveron*, 41 Okla. 692, 139 Pac. 973; *Watson* v. *Taylor*, 35 Okla. 768, 131 Pac. 922. Texas: *Altman* v. *Eckermann* (Tex. Civ. App.) 132 S. W. 523. New York: *Boyles* v. *Blankenhorn*, 168 App. Div. 388, 153 N. Y. S. 466; *Dean* v. *Raplee*, 145 N. Y. 319, 39 N. E. 952, 954. Nebraska: *Bishop* v. *Liston*, 112 Neb. 559, 199 N. W. 825.

"In these States, having carnal knowledge of a girl under the statutory age of consent is made rape. The constituents of the offense are the same as ours. Both are statutory felonies. The difference is in name only. With one accord these cases hold the defendant liable in a civil suit for damages without regard to any question of consent. We find no authority to the contrary, and none is cited in brief.

"Approving and following these decisions, we hold it is the policy of the law to protect the person of the girl of immature years and discretion against the lusts of men; that she is incapable of giving consent to illicit intercourse; it is as though she had no mind on the subject; the guilty man perpetrates a naked, unlawful, and felo-

nious assault upon her, a civil *tort* as well as a crime; she cannot be *in pari delicto;* she is declared by law a victim. A civil action for damages accrues as if she were below the common-law age of consent. So far as affects the right of action, the question of consent *vel non* is wholly immaterial."

It is contended by counsel for Parsons that the Virginia statute recognizes a qualified consent upon the part of the female, if she be between the ages of fourteen and sixteen years, and relies upon the construction of the statute by Judge Kelly in *Buzzard's Case, supra.* The language relied upon is: "The statute in this State recognizes what may be termed a qualified consent between the ages of thirteen (now fourteen) and fifteen (now sixteen), and graduates the punishment accordingly, but this does not affect the classification or designation of the offense."

Proof of consent of the female between the designated ages in a criminal prosecution goes merely to a mitigation of punishment and is no bar to the prosecution. By the same token, proof in a civil action, that the female consented to the sexual act does not bar her right of recovery, but is admissible only on the *quantum* of damages.

There is no merit in the first assignment of error.

The only other assignment of error is the refusal of the court to set aside the verdict and enter judgment for the defendant.

The defendant relies upon the companion case of *Parsons v. Parker,* 157 Va. 603, 161 S. E. 904, 906. In that case it is disclosed that A. J. Parker, the father of Grace Parker, the present plaintiff, brought an action against Parsons for the debauchment of the said Grace Parker. There was a verdict in favor of the defendant. The plaintiff moved the court to set aside the verdict, the motion was sustained, a new trial was ordered on the sole question of damages, and there was a verdict for the

plaintiff, upon which the court entered judgment. A writ of error was awarded by this court. In the opinion it is stated that "the one question before us is whether the trial court's action in setting aside the verdict of the jury as contrary to the law and the evidence constitutes error."

The case of the plaintiff, A. J. Parker, was based almost entirely upon the evidence of the daughter, who freely admitted that she had perjured herself when in a criminal prosecution against Parsons she testified that the sexual act was committed in April and not in February. The defendant rested his defense upon his denial *in toto* of the evidence of Grace Parker, that he had been criminally intimate with her, and upon the evidence of medical experts that he was incapable of becoming the father of a child. There was a clear-cut conflict in the evidence and it was the sole province of the jury to settle the conflict. Under the well settled rule prevailing in this State, this court held that the question was one for the jury and not for the trial court, and reversed the judgment entered for the plaintiff and entered judgment for Parsons in conformity with the verdict of the jury. In his consideration of the case, the writer of the former opinion necessarily viewed the evidence from the standpoint most favorable to the defendant, Parsons, who had a verdict of a jury in his favor.

In the case at bar the same rule applies and our duty is to consider the present case as one practically here on a demurrer to the evidence.

The case of the plaintiff, as displayed by the present record, may be stated thus: Grace Parker was born prematurely; was "slow mentally as well as physically;" because she was a delicate child she did not enter school until she was between the ages of eight and nine; the highest grade attained was the fourth; she had few childhood companions, and lived with her parents and a married sister. She first met the defendant when she was fourteen years of age, at his home, having been escorted there by

her brother-in-law, O. T. Griffith, who sought a loan from defendant, which was denied. (It should be here stated that Griffith did secure the loan from another party, and that his effort to borrow from defendant was a *bona fide* one.)

Following this meeting, at the instance of plaintiff, a correspondence began and the defendant paid her frequent visits. Upon one visit, O. T. Griffith spied upon the couple, and, according to his testimony, detected the defendant in an effort to take undue liberties with the plaintiff. What then occurred is best shown by the following questions and answers:

"Q. Tell these gentlemen exactly what you said when you rushed in and asked him what he was doing?

"A. I asked him what in the hell was he doing, was he trying to make a ————— out of my home. He said, 'No, I ain't doing anything. The light just went out.' I says 'You are a damn liar, that is what you are. I guess I have seen what you have been doing. You are the damnest scoundrel in this country, you are. I have found you out to be. I thought you were a gentleman until I found out better.' That is the words that was used, just about like that. And I says 'I wouldn't trust you with a ————— dog two minutes.'

"Q. All right, sir, go ahead and say what else was said by you or him?

"A. I said 'That ain't all, if your father seen what I have he would have beat your brains out before you could get to that gate.' The girl's father, I mean to say.

"Q. All right, sir, what did he say?

"A. He said 'Orrie, we have always been good friends and I want us to always be good friends, and don't talk so loud because I don't want anybody to know it.'

"Q. All right, sir, what did you say then?

"A. I just talked a little louder, such words as I have told.

"Q. Did you tell him to leave?

"A. I told him I did not want a damn rascal like him in my home. He said if I didn't want him to come there he would stay away. I told him I did not want any damn rascal like him in my home and that is what I wanted him to do, was stay away.

"Q. To your best knowledge, while you were at home, did he ever return to your home again after that?

"A. While I was at home?

"Q. Yes.

"A. No, sir."

Though defendant, when examined as a witness, denied the charge of Griffith, he affirmed in substance the language employed, and did acknowledge that he had on one occasion felt the naked thigh of plaintiff, while she sat in his lap (against his will). After that occurrence, defendant ceased to visit plaintiff until he was informed by her that Griffith would be absent upon a certain night in April. In the face of Griffith's warning, defendant went to the home and took the plaintiff for an automobile ride. Plaintiff testified that on this occasion defendant had intercourse with her. Defendant denied the charge but admitted that at the solicitation of plaintiff he drove the automobile into an abandoned yard, and while there "fondled" the plaintiff for several minutes, and further admitted that he thought the plaintiff "loved him a little bit."

Plaintiff, upon her examination as a witness, further testified that she was in love with the defendant, and upon his promise to marry her, she yielded to his entreaties; that her debauchment occurred in February, 1929.

In this case, as in the former case, plaintiff admitted that she had repeatedly stated that the first act of intercourse occurred in April and not in February, as now claimed, and that she had so testified in the criminal prosecution against defendant for statutory rape.

This case went to the jury on the evidence of the plaintiff, the denial of the defendant and the conflicting evidence

of medical experts as to the capability of defendant to become a father, and the jury found for the plaintiff.

■■ Counsel for the defendant concede that the well settled general rule is that the verdict of the jury is conclusive. It is contended, however, that the plaintiff, by her own admissions, having convicted herself of perjury, her evidence is inherently incredible, and notwithstanding the verdict of a jury approved by the trial court, judgment should be here entered for the defendant.

Unless there has been "a plain deviation from right and justice" a court has neither the right nor the power to substitute itself for the jury. "It is not sufficient that the judge, if on the jury, would have rendered a different verdict."

There is a strong insinuation by counsel that the purported perjury of plaintiff is traceable to a desire to shield one who stood in the relation of *loco parentis*. There is no evidence in this record to warrant the insinuation.

It would be but a waste of energy to further elaborate the time-honored rule that a jury are the sole judges of the credibility of a witness. The jury weighed the conflicting statements of the plaintiff, and, as they had the right to do, gave credit to her statement that she had been debauched by the defendant. The learned trial judge heard the witness testify, observed her demeanor upon the stand and approved the verdict based upon her evidence. To grant the request of the defendant would impinge upon the prerogative of the jury, disregard the approval of the trial court and arbitrarily usurp the right of determination, for which there is no warrant in law.

"It is to the interest of the public that there should be stability in the laws by which they regulate their conduct." *Kelly* v. *Trehy,* 133 Va. 169, 112 S. E. 757, 760.

What was held by Judge Keith in *Equitable Life Assur. Soc.* v. *Kitts,* 109 Va. 105, 63 S. E. 455, 456, applies with peculiar force to the present situation, and is determinative of the question:

"The evidence is of a very unusual character. The case in the main will be found to rest upon the testimony of a witness, who was the agent upon the part of the insurance company to solicit insurance, who was the son of the person insured, and who has, since his death, become his administrator. These facts of themselves are sufficient to excite caution as to the weight to be given to his testimony.

"It will appear, when his testimony comes to be considered, that he shifts his position without hesitation; that what he asserts as a witness is contradicted by his letters, written during the progress of the negotiation; and it is difficult to conceive how greater discredit could have been thrown upon him as a witness than will be disclosed by this record; and yet the jury have seen fit to give credit to his testimony, and they are the final judges of the credibility of witnesses.

"When the law says that it is for the jury to judge of the credibility of a witness, it is not a matter of degree. So long as a witness deposes to facts which, if true, are sufficient to maintain their verdict, then the fact that his credit is impeached by an attack upon his character, by contradictory statements—especially when it is sought to contradict his testimony by conflicting statements made out of court—affects only his credibility, and goes not to his competency but to the weight and sufficiency of his testimony. If the jury, in their discretion, see fit to base their verdict upon his testimony, and the trial court refuses to disturb that verdict, there can be no relief in an appellate court.

"We have stated an extreme case, but a case which in our judgment is fully sustained by the great weight of authority."

The judgment is affirmed.

*Affirmed.*