# Richmond

## Fred Ferrell Simpson v. Commonwealth of Virginia.

December 2, 1957.

Record No. 4747.

Present, All the Justices.

The opinion states the case.

*T. W. Messick* and *J. C. Snidow, Jr.* (*Harvey S. Lutins*, on brief), for the plaintiff in error.

*John W. Knowles, Assistant Attorney General* (*J. Lindsay Almond, Jr., Attorney General*, on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

Fred Ferrell Simpson was arrested on a warrant charging him with the unlawful sale of alcoholic beverages in Montgomery County on July 8, 1956, in violation of § 4-58, Code 1950, as amended. It was also alleged in the warrant that he had been previously convicted of a similar offense. The judge of the County Court found the accused guilty as charged and imposed a fine of $100 and a jail sentence of thirty days. On appeal to the Circuit Court, the jury fixed his punishment at a fine of $50 and confinement in jail for a period of thirty days. Simpson's motion to set aside the verdict was overruled and final judgment was entered thereon. The trial court also entered an order of interdiction. We granted accused a writ of error.

The evidence in the record before us is in narrative form and is stated below in some detail.

Alonzo Elliott testified that on Sunday, July 8, 1956, shortly after 12:00 o'clock noon, he and Sid Godby entered "the front or store part" of Fred Simpson's Service Station, near Price's Fork in Montgomery County; that there were several persons in the station; that he did not have any trouble or argument with anyone; that he re-

quested Fred Simpson, whom he had known for 25 or 30 years, to sell him a quart of wine, and that he went with Simpson into the back room of the station where Simpson extracted a quart of wine from a trunk and delivered it to him in exchange for the sum of $1.50. He further related that he returned to the "store part of the building" and asked Godby to drive him to his uncle's home; that they made their exit through the front door and proceeded to the home of his uncle, a Mr. Shepherd, who lived near Price's Fork, where he telephoned Sheriff George W. Arrington and requested him to stop by, which he did about 2:30 P. M. on that day. As a result of this conference the warrant in question was issued against Simpson.

On cross examination Elliott admitted having been convicted of several felonies in the Circuit Court of Montgomery County. He was found guilty October 7, 1935 on a plea of guilty to an indictment charging larceny. He was convicted of burglary on April 1, 1938. On a plea of guilty to two indictments charging arson, he was sentenced on February 3, 1942.

Sheriff George W. Arrington stated that in response to a telephone call from Elliott he went to Shepherd's home about 2:30 P. M. where he was told by Elliott that he had purchased a quart of wine from Simpson; that Elliott was drinking, but not to the extent he did not know what he was talking about, and that Elliott told him that he and Simpson had an argument and "fell out". The sheriff then took Elliott to a justice of the peace before whom he (Elliott) swore out the warrant against Simpson. Arrington introduced in evidence a bottle of wine. The sales stamp revealed that it was purchased on July 7, 1956 from an ABC store in Christiansburg.

A. B. Correll, Clerk of the Circuit Court of Montgomery County, stated that according to the records of his office, Fred Simpson, on his plea of guilty, was convicted of the unlawful sale of wine on December 22, 1953.

Simpson did not testify, but he produced six witnesses who gave evidence on his behalf.

Sid Godby related that on Saturday, July 7, 1956 he and Ralph Peele made two trips to the ABC store in Christiansburg and purchased four bottles of wine on each trip; that he had been with Elliott since the afternoon of July 7, 1956; that he, Elliott and Peele were drinking and rode around that night going as far as

West Virginia, but returned to Elliott's home and consumed a quart of liquor furnished by Elliott's brother where he (Godby) became "about drunk".

He further related that they spent the night at Elliott's home and the next morning he, Elliott and Elliott's brother drank some wine; that later he and Elliott went to Simpson's station; that Elliott was drunk and was desirous of buying groceries from Simpson on credit, but Simpson refused to extend him further credit stating that his bill was too high at the time; that Elliott had an argument with Simpson in his place of business; that Elliott did not go with Simpson to the back room, and that he was with Elliott all the time he was in the store. He also stated that Elliott argued with E. P. Simpson, brother of accused; that he drove Elliott to his uncle's home; that they had one fifth of wine which he had purchased the preceding day from the ABC store in Christiansburg and it was given to Elliott when he departed from his automobile, and that Elliott did not have any wine with him when he entered his car.

According to E. P. Simpson, he was in the station the entire time Elliott was present and Elliott wanted to purchase groceries on credit, but his brother refused to extend him further credit unless his outstanding bill of approximately $70 was paid. He said that Elliott was drunk and threatened to do him bodily harm; that Elliott did not enter the back room of the station, nor did he purchase wine or anything else from accused, and that accused ordered Elliott to leave the premises, which order he obeyed and drove off with Godby.

The evidence of C. D. Fouchee, a dairy farmer and a long time customer of Simpson, was substantially the same as that of E. P. Simpson. In addition thereto, he stated that he refused a request from Elliott to lend him money, and that Elliott was either drunk or crazy.

Ralph Peele testified that he was with Godby on Saturday, July 7, 1956, when Godby bought wine from an ABC store in Christiansburg; that they drank all that day and spent the night at Elliott's home, and that he did not see Godby give Elliott a bottle of wine.

The evidence of Lee Price, a distant relative of Elliott, was to the effect that when he arrived Elliott was in the station drunk trying to make a purchase on credit, but Simpson denied his request, stating that he owed too much at the time, and Elliott was directed to leave the station, which he did. He further stated that Simpson went

outside and put gas in a car, at which time he heard Elliott say to Simpson "Well, you are going to be damn sorry", and that Elliott was not carrying anything when he drove away in Godby's vehicle.

The final witness to give evidence on behalf of accused was Russell Linkous who said he was inside the premises when Elliott and Godby entered. He corroborated other witnesses concerning the incident in reference to Elliott's effort to buy on credit. He said that Elliott was drinking "right smart", became mad and endeavored to engage in fisticuffs with E. P. Simpson. He related that neither Elliott nor accused went into the back room; that Elliott made no purchases; that he left the building shortly before Elliott and was seated on a bench near the front door when Elliott made his departure. He further stated that he declined Elliott's invitation to take him to the school where he said he had hidden a quart of wine; that he heard Elliott remark to Simpson that he would be "damn sorry", and that Elliott had nothing in his hands when he took his seat in Godby's automobile.

Simpson relies upon the following assignments of error:

1. "The Court erred in admitting the testimony of A. B. Correll, Clerk of the Circuit Court of Montgomery County, Virginia, for the reasons assigned in the record.

2. "The Court erred in giving at the instance of the Commonwealth, Instruction No. 1 for the reason that the evidence was wholly insufficient to establish beyond a reasonable doubt the charge contained in the warrant, and for the further reason that the instruction erroneously charged the jury that a jail sentence was mandatory.

3. "The Court erred in failing and refusing to set aside the verdict of the jury as contrary to the law and evidence for the reasons assigned in the record and for the further reason that the evidence was wholly insufficient to establish beyond a reasonable doubt guilt of the offense charged in the indictment."

▉ Correll was permitted to testify, over the objection of Simpson, that the records in the Clerk's office disclosed Fred Simpson was convicted on December 22, 1953 for the sale of wine. The grounds for Simpson's objection were that he offered to stipulate that he had been previously convicted of a like charge. He asserted that it was prejudicial to admit any evidence or allow any statement to the jury by any witness, the attorney for the Commonwealth or the court concerning a former conviction of the accused, alleging such to be a violation of his constitutional rights against self-incrim-

ination, and further that the admission of such evidence would place his general reputation and character in issue. He also urged upon the trial court, as he does here, that even if the evidence of a former conviction was admissible, the court erred in not instructing the jury at the time Correll testified that the evidence was to be considered as only affecting the *quantum* of punishment and not affecting the question of his guilt or innocence of the offense for which he was charged.

Section 4-58, Code 1950, as amended, provides in part:

"If any person who is not licensed under the provisions of this chapter to sell alcoholic beverages in this State shall sell any alcoholic beverages other than permitted by the provisions of this chapter, he shall be guilty of a misdemeanor.

"The punishment for any violation of the provisions of this section shall be a fine of not less than fifty dollars nor more than five hundred dollars and confinement in jail for not less than thirty days nor more than twelve months. Provided, however, that in the event of a second or subsequent conviction under this section the jail sentence so imposed shall in no case be suspended."

Section 4-91, Code 1950, reads as follows:

"In any indictment, information or warrant charging any person with having violated any provision of this chapter it may be alleged, and evidence may thereafter be introduced at the trial of such person to prove, that such person has been previously convicted of a violation or violations of this chapter."

The constitutionality of § 4-91, *supra*, (formerly § 4675 (61b), Michies Code 1942) as well as the admissibility of evidence of a previous conviction for the purpose of determining the *quantum* of punishment in event the accused should be proved guilty by independent testimony were considered and upheld by this court in *Surratt* v. *Commonwealth*, 187 Va. 940, 943, 48 S. E. 2d 362. See also *Campbell* v. *Commonwealth*, 176 Va. 564, 568, 11 S. E. 2d 577; *Smith* v. *Commonwealth*, 182 Va. 585, 595, 30 S. E. 2d 26; *Wheeler* v. *Commonwealth*, 192 Va. 665, 66 S. E. 2d 605; *Crowe* v. *Commonwealth*, 193 Va. 752, 756, 71 S. E. 2d 77.

In reliance upon their contention that the trial court should have instructed the jury at the time Correll's testimony was given to the effect that such evidence was to be considered only as to the *quantum* of punishment and was not to be considered as tending to prove the guilt of accused, counsel for Simpson cite *Campbell* v.

*Commonwealth, supra; Smith* v. *Commonwealth, supra; Surratt* v. *Commonwealth, supra;* and *Crowe* v. *Commonwealth, supra.* It appears that none of the cited cases lays down the principle that such an instruction must be given at the time the evidence is offered, but they do postulate that the jury should be so instructed before retiring to consider their verdict.

Counsel have not directed our attention to, nor have we found, a statute in this state which prescribes any particular time at which instructions shall be given. It necessarily follows that the time of giving instructions rests in the sound judicial discretion of the court. It is the general practice in this Commonwealth to instruct the jury at the conclusion of all the evidence and before argument. However, incidents may arise that render it necessary and proper in the interest of justice to give instructions during argument or after the jury has retired for the purpose of considering their verdict. Burks Pleading and Practice, 4th Ed., Instructions, § 296, p. 534; 10 M. J., Instructions, § 37, p. 243.

The record discloses that the court granted instruction No. B, which is as follows:

"The Court instructs the jury that the fact that the defendant has been heretofore convicted of a like offense is not proof that he is guilty of the offense here charged and such fact should not be considered by the jury in reaching a conclusion as to his guilt or innocence on the present charge."

This instruction adequately informed the jury that Simpson's prior conviction of a like offense is not proof that he is guilty of the offense charged in the warrant and should not be considered in determining his guilt or innocence on the charge for which he was being tried. We also note that the attorney for the Commonwealth discussed the instruction in his closing argument before the jury.

The admission of Correll's testimony was proper, and we find no abuse of the sound judicial discretion of the trial court in refusing to instruct the jury at the time it was offered. Assignment of error No. 1 is without merit.

Under assignment of error No. 2, Simpson contends that the court erred in giving instruction No. 1 tendered by the Commonwealth, which reads:

"The Court instructs the jury if you believe from the evidence beyond a reasonable doubt that the defendant sold alcoholic beverages as charged in the warrant, then you shall find the defendant

guilty as charged in the warrant and fix his punishment by a fine of not less than $50.00 nor more than $500.00, and by confinement in jail for not less than 30 days nor more than 12 months."

He maintains that this instruction should not have been given because the evidence was wholly insufficient to warrant a conviction, and, therefore, there was no evidence on which to base the instruction. This contention, being related to assignment of error No. 3, will be discussed later under that assignment.

Simpson also argues that the instruction is erroneous because it assumed that the Commonwealth had proved beyond a reasonable doubt that he had been previously convicted of the unlawful sale of alcoholic beverages.

The warrant charged: "* * * Fred Simpson in the said County did * * *: Unlawfully sell to the said *Lonzo* Elliott 1/5 of wine on the 8th day of July, without having permission, or license to sell alcoholic beverages, in violation of Section 4-58 Code of Virginia, * * *."

A jail sentence is mandatory upon conviction for a violation of § 4-58, Code 1950, as amended, *supra*, whether it be a first or subsequent conviction, and in event of a second or subsequent conviction the jail sentence imposed shall in no case be suspended. Instruction No. 1 followed the statute and stated the limits of mandatory punishment to be imposed, if the jury believed from the evidence beyond a reasonable doubt that the accused sold alcoholic beverages as charged in the warrant.

We do not think the instruction assumed that a previous violation of § 4-58 had been established. In any event, the allegation in the warrant to that effect was proved beyond a reasonable doubt by the uncontradicted testimony of Correll. In fact, Simpson offered to stipulate that he had been previously convicted.

Simpson further argues that the 1952 amendment to § 4-58, Code 1950, *supra*, forbidding the suspension of the jail sentence in the event of a second or subsequent conviction does not permit proof before the jury that he had been previously convicted under Chapter 1 of the Alcoholic Beverage Control Act, but the effect of the amendment is to forbid a suspension of the jail sentence by the court. He also maintains that since the amendment was enacted subsequent to § 4-91, Code 1950, *supra*, which permits the allegation and proof that the accused has been previously convicted, it nullifies and repeals § 4-91. This contention is without merit. The 1952 amendment to

§4-58 did not nullify or repeal § 4-91 and the Commonwealth clearly had the right to prove a former conviction before the jury.

Assignment of error No. 3 challenges the sufficiency of the evidence to sustain the verdict of guilty rendered by the jury. It is argued that Simpson was convicted on the uncorroborated testimony of Elliott which was incredible and so contrary to human experience as to be unbelievable, and that his testimony was completely refuted by reliable witnesses who proved that Elliott's actions were the result of hatred and spite toward accused.

In support of this contention, counsel for Simpson say that the reporting by Elliott to Sheriff Arrington of the sale of wine by accused within two hours is not in accord with human experience and is incredible, and that since Arrington testified Elliott told him that he and Simpson had an argument and "fell out", which Elliott, who has a record of convictions for larceny, burglary and arson, stated on the witness stand did not occur, his testimony is rendered unbelievable and incredible. They further say that the testimony of disinterested witnesses present who stated that there was no sale made; that Elliott was drunk; that he had an argument with Simpson because he was refused additional credit, and that he stated to Simpson, "Well, you are going to be damn sorry" shows that his testimony was the result of hatred and spite toward Simpson and is totally unreliable.

If Elliott's evidence is not incredible, the Commonwealth has proved every essential element of its case. Elliott testified that he purchased the wine from Simpson. Arrington introduced the wine in evidence, and Correll proved that accused had been previously convicted of the sale of wine.

In *Equitable Life Assur. Soc.* v. *Kitts*, 109 Va. 105, 106, 107, 63 S. E. 455, it is stated:

"When the law says that it is for the jury to judge of the credibility of a witness, it is not a matter of degree. So long as a witness deposes to facts which, if true, are sufficient to maintain their verdict, then the fact that his credit is impeached by an attack upon his character, by contradictory statements—especially when it is sought to contradict his testimony by conflicting statements made out of court—affects only his credibility, and goes not to his competency but to the weight and sufficiency of his testimony. If the jury, in their discretion, see fit to base their verdict upon his testimony, and the trial court refuses to disturb that verdict there can be no relief

in an appellate court." *Parsons* v. *Parker*, 160 Va. 810, 821, 170 S. E. 1; 20 M. J., Witnesses, § 74, p. 537.

We held in *Kirby* v. *Moehlman*, 182 Va. 876, 883, 30 S. E. 2d 548, that simply because the testimony of a witness is not plausible or that a judge might not have believed it if he had been a member of the jury, the court may not, as a matter of law, pronounce such testimony, upon which a verdict has been rendered, impossible, manifestly untrue, unworthy of belief, contrary to physical facts, common observation and experience, and inherently incredible.

In *Burke* v. *Scott*, 192 Va. 16, 23, 63 S. E. 2d 740, 744, Mr. Justice Buchanan, speaking for the court, said: "* * * To be incredible, evidence must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." See also *Clayton* v. *Taylor*, 193 Va. 555, 560, 69 S. E. 2d 424; *Anchor Motor Freight* v. *Paul*, 198 Va. 480, 486, 95 S. E. 2d 179.

The jury were informed that Elliott was a convicted felon. They saw and heard the witnesses testify and were the sole judges of their credibility and of the weight to be given their testimony. Elliott's testimony, while standing alone, was weighed along with that of the several witnesses for accused and all conflicts in the evidence were resolved against accused. The jury verdict was fortified by the approval of the trial judge, thereby indicating, in his judgment, the sufficiency of the evidence to support the verdict.

As was said in *Bradley* v. *Commonwealth*, 196 Va. 1126, 1136, 86 S. E. 2d 828: "In testing the credibility and weight to be ascribed to the evidence, we must give trial courts and juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guide posts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them."

As distasteful and implausible as it may seem to some for one to purchase alcoholic beverages from a friend or acquaintance, who cannot lawfully sell, and then cause his arrest and conviction for such violation, we cannot overlook the facts of life and say that his testimony is manifestly false and ought not be believed by reasonable men. We are cognizant of the fact that it has been done by some who deal in this illicit traffic. There is nothing physically impossible

about such a sale. It can and does happen as the jury believed it did in the case at bar. We do not find Elliott's testimony to be incredible.

We conclude that the trial court did not err in admitting the testimony of Correll or in the giving of instruction No. 1; that the evidence is sufficient to sustain the jury's verdict, and that the court committed no error in refusing to set aside the verdict.

The judgment appealed from is

*Affirmed.*