COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judge Decker and Senior Judge Clements
Argued at Richmond, Virginia


CHRISTOPHER SEAN PICKETT

MEMORANDUM OPINION* BY
v.      Record No. 1320-14-2        CHIEF JUDGE GLEN A. HUFF
                                    JULY 21, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Paul W. Cella, Judge

(Marlene A. Harris, on brief), for appellant. Appellant submitting
on brief.

(Mark. R. Herring, Attorney General; Eugene Murphy, Senior
Assistant Attorney General, on brief), for appellee. Appellee
submitting on brief.


Christopher Sean Pickett ("appellant") appeals his convictions for two counts of carnal

knowledge, in violation of Code § 18.2-63, and two counts of indecent liberties, in violation of

Code § 18.2-370. After a bench trial in the Circuit Court of Dinwiddie County ("trial court"),

appellant was sentenced to a total of forty years in the Virginia Department of Corrections with

thirty-three years and eight months suspended. On appeal, appellant asserts that the trial court

erred

> when finding the evidence sufficient for a finding of guilt against
> appellant because there was insufficient evidence that appellant
> had . . . sex with the complaining witness, as the credibility of
> [K.C.] was impeached, the evidence that the court used to
> corroborate the statements of the complaining witness' testimony,
> that she was pregnant, and that she had an abortion was
> inadmissible, and that inadmissible evidence was the basis for the
> finding of guilt, thus the error was not harmless. Further, the
> testimony of the Commonwealth's witness Jennifer Belvin was

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

impeached by another witness, and the testimony of [K.C.] was impeached by another witness as well . . . .

For the following reasons, this Court affirms the trial court's ruling.

## I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

Appellant lived with his girlfriend and her fourteen-year-old daughter, K.C. In June 2013, K.C. borrowed a cell phone belonging to her stepfather. When the stepfather received the phone back from K.C. he observed that the phone was still logged onto K.C.'s Facebook instant messaging application. The stepfather noticed that appellant's name appeared in the messaging windows. When the stepfather asked K.C. about the messages, she at first said nothing but then "started crying." Eventually, K.C. explained that she and appellant had been "seeing each other." After their conversation, the stepfather "immediately called the magistrate" and brought K.C. to the Dinwiddie County Sheriff's Office.

At the sheriff's office, K.C. spoke with Lieutenant Duane H. Gilliam ("Gilliam") and "made allegations of her mother's boyfriend who she identified as [appellant] having been engaging in sexual intercourse . . . , oral sex and digital penetration" with her. Shortly thereafter, Gilliam questioned appellant, collected "[s]heets and a pair of underwear" stained with a red substance as evidence, and took out a warrant against appellant. Subsequently, a grand jury indicted appellant on charges of indecent liberties with a child under the age of fifteen years and carnal knowledge with a child older than thirteen but younger than fifteen years old.

Appellant waived his right to a jury. At the bench trial, K.C. testified that, around Christmas 2012, appellant "penetrated" her without a condom. After this initial encounter, K.C. indicated that she and appellant continued having sexual relations "[t]wo, three times a week, or more" until May 2013. In May 2013, K.C. began to experience severe stomach and back pains. On May 3, 2013, K.C. went to the doctor and learned that she was pregnant. K.C. had an abortion on June 12, 2013. Between the dates of her pregnancy diagnosis and her abortion, K.C. and appellant continued having sexual relations multiple times each week. K.C. testified she had sexual intercourse with appellant in the days immediately following her abortion which resulted in her bleeding on the bed sheets. The stained sheets were given to the investigating officer. In his testimony, Gilliam indicated that he collected "[s]heets and a pair of underwear" and saw "a red substance on the sheets." Additionally, Gilliam stated appellant was born on June 17, 1980 and K.C. was born on July 30, 1998.

The girlfriend testified that in June 2013 K.C. told her that she and appellant had been having sexual relations for six months. The girlfriend indicated that she confronted appellant who initially denied K.C.'s allegations. Over objection, the girlfriend stated that she took K.C. to the doctor after K.C. complained of stomach pains; the physician advised that K.C. was pregnant. Additionally, the girlfriend indicated she "saw a positive pregnancy print off from the hospital." Moreover, she testified that appellant indicated he wanted to raise the child as his own but K.C. elected to get an abortion.

Appellant testified in his defense and denied any sexual relationship with K.C. When asked about his Facebook communications with K.C., appellant admitted that he "told [K.C.] [he] loved her a lot of times." Moreover, appellant conceded that he spoke with K.C. about her pregnancy but denied ever stating he "wanted to take the kid as [his] own." Additionally, appellant offered Corporal T.A. Stuart's ("Stuart") testimony to impeach K.C.'s testimony.

Specifically, Stuart testified that on May 28, 2013, he contacted the girlfriend regarding an unrelated incident. Stuart indicated that the girlfriend told him that K.C. had an "issue with not telling the truth" and "lies when she can't get her way."

At the conclusion of the evidence, appellant argued that K.C.'s testimony had been impeached and was not credible. The Commonwealth argued that the totality of the evidence supported a guilty verdict. In finding appellant guilty, the trial court indicated that "the [appellant's] explanation of the nature of his relationship with [K.C.] seems implausible" and "[i]f all we had was his testimony against hers this would be a very close case." The trial court, however, explained that

> what tips me in the favor of the Commonwealth is the fact she became pregnant and had an abortion and the fact he said he wanted to raise the child as his own. I think it would be highly unlikely and implausible that anyone else would have impregnated her . . . . She testified that they continued to have sexual intercourse after the abortion. And I accept that testimony as well.

This appeal followed.

## II. STANDARD OF REVIEW

Code § 19.2-324.1[1] provides "when a challenge to a conviction rests on a claim that the evidence was insufficient because the trial court improperly admitted evidence, the reviewing court shall consider all evidence admitted at trial to determine whether there is sufficient evidence to sustain the conviction." If this Court were to determine that the evidence was erroneously admitted and not harmless error, "the case shall be remanded for a new trial if the Commonwealth elects to have a new trial." Code § 19.2-324.1.

---

[1] In granting appellant's petition for appeal, this Court instructed the parties to "address the impact of recently adopted Code § 19.2-324.1 which addresses the appellate standard of review of erroneously admitted evidence in reviewing the legal sufficiency of the evidence on appeal."

- 4 -

When reviewing a challenge to the sufficiency of the evidence below, this Court will "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). This means the trial court's decision cannot be overturned on appeal unless no "'rational trier of fact'" could have come to the conclusion it did. Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (en banc) ("We let the decision stand unless we conclude no rational juror could have reached that decision."), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). "An appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson, 443 U.S. at 318-19). Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (emphasis added).

## III. ANALYSIS

On appeal, appellant asserts that the trial court erred in finding the evidence sufficient for appellant's conviction. Specifically, appellant contends that the trial court improperly admitted and relied on hearsay evidence to corroborate K.C.'s impeached testimony. Consequently, appellant's sufficiency argument relies on his contention that K.C.'s testimony was impeached and, therefore, unreliable.

The testimony of a victim, if believed, can be sufficient, without corroborating evidence, to support a conviction of sexual offenses such as those at issue here. Wilson v. Commonwealth,

46 Va. App. 73, 87, 615 S.E.2d 500, 507 (2005) ("a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim"). "A rape conviction may be sustained solely upon the testimony of the victim. There is no requirement of corroboration. . . . [This principle] also extends . . . to . . . other sexual offenses." Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 203 (1984). Indeed, "[t]he reason for the rule is the typically clandestine nature of the crime" and that "[t]here are seldom any witnesses to such an offense except the perpetrator and the victim." Id. at 299, 321 S.E.2d at 204. Additionally, regarding impeaching the victim's testimony, the Supreme Court has explained

> "[w]hen the law says that it is for [the trier of fact] to judge . . . the credibility of a witness, it is not a matter of degree. So long as a witness deposes to facts, which, if true, are sufficient to maintain [its] verdict, then the fact that his credit is impeached . . . by contradictory statements . . . affects only his credibility, and goes not to his competency but to the weight and sufficiency of his testimony. If the [trier of fact], in [its] discretion, see[s] fit to base the verdict upon his testimony, . . . there can be no relief in an appellate court."

Simpson v. Commonwealth, 199 Va. 549, 557-58, 100 S.E.2d 701, 707 (1957) (quoting Parsons v. Parker, 160 Va. 810, 821, 170 S.E. 1, 4 (1933)); see also Burke v. Scott, 192 Va. 16, 23-24, 63 S.E.2d 740, 744 (1951).

Appellant argues that K.C.'s testimony is unreliable because it was impeached by Stuart's testimony that K.C. had an "issue with not telling the truth." Credibility determinations by the trial court are afforded great deference. Simpson, 199 Va. at 557-58, 100 S.E.2d at 707 ("If the [trier of fact] . . . see[s] fit to base [its ruling] upon [impeached testimony] . . . there can be no relief in an appellate court."). Notwithstanding any impeachment, the trial court accepted K.C.'s testimony of a sexual relationship between herself and appellant. Such finding of fact is binding unless there is no basis whatsoever for the finding. Lanier v. Commonwealth, 10 Va. App. 541, 549, 394 S.E.2d 495, 500 (1990) ("the finding of the trial judge as to the credibility of witnesses

and the weight to be given their testimony . . . will not be disturbed unless it is plainly wrong or without evidence to support it"). K.C.'s testimony, moreover, was supported by her pregnancy and subsequent abortion.

Additionally, appellant argues that the stepfather's and girlfriend's testimony regarding K.C.'s statements about her sexual activities with appellant were inadmissible hearsay. Code § 19.2-268.2 outlines the "recent complaint hearsay exception" and provides that "the fact that the person injured made complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness." While "[e]vidence of a victim's out-of-court complaint is not admissible as independent evidence of the offense . . . it is admissible to corroborate the victim's testimony and other independent evidence of the offense." Mitchell v. Commonwealth, 25 Va. App. 81, 85-86, 486 S.E.2d 551, 553 (1997). Consequently, the stepfather's and girlfriend's statements were admissible under the "recent complaint" exception as they were utilized to corroborate K.C.'s independent testimony and, therefore, the trial court did not abuse its discretion in allowing their admission.

Moreover, appellant contends that the trial court improperly admitted evidence that K.C. was pregnant and received an abortion. Appellant, however, conceded both of these points in his own testimony. "'[W]here an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error.'" Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992) (quoting Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970)).

Specifically, appellant testified that he and K.C. "had talked about [raising the child] but [he] never said that [he] wanted to take the kid as [his] own." Moreover, appellant stated

"whether or not [K.C.] decides to keep the kid or not, I said I would help you work through it." As "a litigant waives an objection to evidence when he introduces 'evidence dealing with the same subject as part of his own case-in-chief,'" appellant's statements regarding K.C.'s pregnancy and abortion constituted a waiver of his assertion that the Commonwealth's testimony on these issues was inadmissible. Isaac v. Commonwealth, 58 Va. App. 255, 260, 708 S.E.2d 435, 437 (2011) (quoting Pettus v. Gottfried, 269 Va. App. 69, 79, 606 S.E.2d 819, 825 (2005)).

In any event, "[e]ven though testimony is objectionable as hearsay, its admission is harmless error when the content of the extra-judicial statement is clearly established by other competent evidence." Schindel v. Commonwealth, 219 Va. App. 814, 817, 252 S.E.2d 302, 304 (1979). In her testimony, K.C. established that she and appellant had a sexual relationship from December 2012 until June 2013. Moreover, K.C. indicated that she became pregnant in May and received an abortion in June 2013. K.C.'s testimony alone sufficiently established appellant's crimes. Fisher, 228 Va. at 299, 321 S.E.2d at 20. Accordingly, admitting hearsay evidence on these points would be, at worst, harmless. Therefore, this Court finds that the trial court did not err in finding sufficient evidence to convict appellant.

## IV. CONCLUSION

Finding no error, this Court affirms the trial court's rulings.

Affirmed.