COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Russell, Athey and Senior Judge Frank
Argued at Hampton, Virginia


ORAS PAUL FREEMAN

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0582-21-1                          JUDGE WESLEY G. RUSSELL, JR.
                                                        MARCH 15, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for
appellant.  Appellant submitting on brief.

Justin B. Hill, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


Oras Paul Freeman challenges the sufficiency of the evidence to support his conviction of

unlawful wounding in violation of Code § 18.2-51.  For the following reasons, we affirm the

judgment of the trial court.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)).  In reviewing the record, we discard any of Freeman's conflicting evidence, and we

regard as true all credible evidence favorable to the Commonwealth and all inferences that may

reasonably be drawn from that evidence.  *Id.* at 473.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

In the fall of 2019, Jarrett Fuller and his girlfriend, Kisha Murphy, were subletting part of a duplex apartment from Freeman. On September 12, 2019, while Fuller and Murphy were in their bedroom, Freeman approached the doorway and accused Fuller of borrowing tools and not returning them. Freeman threatened to "lay [Fuller] out" if he did not "put [the] tools back." After Freeman left the bedroom, Murphy took a shower while Fuller napped on his bed.

Fuller awoke when he felt an "object" hit his head. He opened his eyes and saw Freeman straddling him while holding a "jackhammer pipe." Freeman repeatedly struck Fuller with the pipe as Fuller blocked the blows with his arms. Murphy exited the bathroom because she heard a loud, abnormal sound while in the shower, "like somebody jumped on the bed or hit the floor." Freeman was on top of Fuller, striking him with the pipe.

Fuller grabbed the pipe and struggled with Freeman as the scuffle moved from the bedroom and into the hallway. Once in the hallway, Freeman wrenched the pipe from Fuller's grasp and struck him with it until Fuller again seized the pipe. The scuffle ended after the men grew tired; Freeman then walked outside and returned the pipe to his vehicle. Fuller sat on the couch, and Murphy called the police. Fuller and Murphy testified that Fuller never struck Freeman during the affray.

When Officer Phillips arrived at the house, he found Fuller outside, "bleeding from the top of his head." Fuller told Phillips that he and Freeman had an "argument over tools and [Freeman] hit him." Murphy told Phillips that the fight occurred "in the hallway." Phillips found Freeman inside the residence and detained him. Phillips noticed Freeman had a "small laceration on his lip" and was holding his chest while complaining that he "was having trouble breathing," but Freeman sustained no further injuries.

After paramedics arrived, an ambulance transported Fuller to the hospital. Fuller sustained lacerations to three spots on his head, a broken arm, and a broken nose. Fuller's

- 2 -

lacerations were treated with numerous stitches, and his arm was immobilized in a sling. Later that day, Detective Llosa executed search warrants for the apartment and Freeman's vehicle. In the apartment, Llosa photographed blood that was splattered and smeared on the floor, doorframe, and wall outside of Fuller's and Murphy's bedroom. In contrast to the scope of the blood he observed in the hallway, Llosa did not notice any "large bloodstains" in the bedroom but could not remember whether he "check[ed]" the bedroom for blood. From the vehicle, Llosa recovered a jack and a twenty-inch-long metal pipe. The pipe had a red stain on it that Llosa suspected was blood.

Dwaine Roberts, the landlord, testified that Freeman had lived in the residence for seven or eight years and that Fuller was a "periodic visitor." Roberts claimed that, about a week before the incident, he had seen Fuller, who appeared to have numerous injuries on his head, leg, and arm. The day after the incident, Roberts talked to Murphy and Fuller at the residence about rent. Roberts testified that Fuller was not wearing a cast, had no observable injuries, and "seemed fine" during the conversation.

Freeman testified that he had been trying to evict Fuller and Murphy for a couple of weeks before the incident because they were not paying rent. Freeman had served Fuller with an unlawful detainer action, which caused Fuller to become "agitated." Freeman acknowledged that, on September 12, 2019, he asked Fuller about tools that he claimed Fuller had borrowed. Fuller denied borrowing the tools, and Freeman went outside to work on his truck, using his car jack's pipe handle to prop open the hood. Freeman reported that he returned to the apartment to retrieve his inhaler because he suffered from COPD and came inside while carrying the pipe.

After a few minutes, he approached Fuller's bedroom door to ask about the tools again; when he did, Fuller "kicked [him] back into the hallway." Freeman claimed that he retreated to the living room to retrieve his inhaler, but Fuller pursued him, so Freeman "grabbed the pipe . . .

- 3 -

to stop [Fuller] from attacking." Freeman explained, "The only reason I did what I did, he was coming towards me so I didn't know what his intentions were." Freeman asserted, "I didn't know exactly whether I hit him or not. I swung the pipe just to keep him off of me." They "wrestled" over the pipe and had moved back into the hallway when Freeman fell to the floor. Freeman testified that he "reached[ed] up" and "punched [Fuller], . . . grabbed the back of his head and pulled him down[,]" at which point Fuller's head "hit the corner of the door," causing Fuller to bleed.

Freeman moved to strike the evidence at the close of the Commonwealth's case-in-chief and at the close of all the evidence; the trial court denied both motions. After closing argument, the trial court convicted Freeman of unlawful wounding. The trial court found that the physical evidence was not consistent with Freeman's testimony and "more consistent" with Fuller's and Murphy's accounts. The trial court specifically concluded that "it's far more likely that this blood splatter on the wall outside the door came from the blow, being hit with a pipe, near that location" and that it "[did not] think the evidence shows there is any justification for the battery with the pipe." This appeal follows.

ANALYSIS

On appeal, Freeman contends that the evidence was insufficient to prove that he "either acted with the intent to maim, disfigure, disable, or kill Fuller or that his act in striking Fuller was not the exercise of reasonable force to prevent a further attack by Fuller."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable

- 4 -

doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Freeman does not contest that he engaged in a physical altercation with Fuller. Rather, he contends that the evidence failed to prove that he struck Fuller "with the requisite intent" and that it did not "rebut the affirmative defense of self-defense [he] interposed." Freeman argues that the Commonwealth's evidence was inherently incredible and failed to exclude the reasonable hypothesis of innocence advanced in his testimony at trial. Accordingly, Freeman essentially argues that the trial court erred in crediting the Commonwealth's evidence and in rejecting his claim whereby he acted in self-defense.

"Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Perkins*, 295 Va. at 330 (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). "Circumstantial evidence of intent may include the conduct and statements of the alleged offender[.]" *Adams v. Commonwealth*, 33 Va. App. 463, 471 (2000). "Determining a defendant's intent 'is a factual question, which lies peculiarly within the province of the [fact finder].'" *Barnett v. Commonwealth*, 73 Va. App. 111, 120 (2021) (quoting *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994) (*en banc*)). "It is proper for a court to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted in determining whether there is sufficient

evidence to prove an intent to maim, disfigure, disable or kill." *Burkeen v. Commonwealth*, 286 Va. 255, 260-61 (2013). In determining whether a defendant acted with the requisite intent, a "fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts[,]" *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998), and a "fact finder is entitled to draw inferences from those facts proven to be true, so long as the inferences are reasonable and justified[,]" *Cottee v. Commonwealth*, 31 Va. App. 546, 555 (2000). Accordingly, "when a person without any provocation strikes another with a deadly weapon . . . and thereby maims or disfigures him, he is presumed to have intended to maim or disfigure because that was the natural and probable consequence of his act." *Banovitch v. Commonwealth*, 196 Va. 210, 216 (1954).

Conversely, "[s]elf-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "The trier of fact determines the weight of evidence in support of a claim of self-defense." *Commonwealth v. Needham*, 55 Va. App. 316, 326 (2009) (quoting *Gardner v. Commonwealth*, 3 Va. App. 418, 426 (1986)). "Whether an individual establishes that he acted in self-defense is 'an issue of fact.'" *Id.* (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 979 (1977)).

Here, Freeman claimed that Fuller initiated the fight when Fuller kicked him through the doorway and that he grabbed the pipe only when Fuller continued through the hall towards him, but both Fuller and Murphy testified that Freeman first attacked Fuller while Fuller was napping in the bedroom. Additionally, Freeman's account that he only "swung" at Fuller to prevent an attack by Fuller and that Fuller injured his head by falling into the "door casing" conflicts with Fuller's testimony that Freeman hit him several times in the head with the pipe.

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." *Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). In arguing that the Commonwealth's evidence was inherently incredible as a matter of law, Freeman claims that Fuller's and Murphy's testimony was contradicted by the physical evidence and their statements to Phillips. He specifically asserts that, because of "the internal inconsistencies in the testimony of both Fuller and Murphy, their prior inconsistent statements concerning the details of the incident, and the location of the bulk of the blood stains in the hall rather than in the bedroom, their version of events was incredible as a matter of law."

"A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley*, 69 Va. App. at 626. Instead, such inconsistencies are appropriately weighed and "'resolved by the fact finder,' not the appellate court." *Id.* (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

We have held that a witness' testimony was not inherently incredible when it was corroborated by other evidence. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019).

Here, Fuller's and Murphy's accounts were largely consistent and corroborated each other. They both testified that Fuller and Freeman had a dispute regarding tools, after which Fuller took a nap. They both testified that Freeman was hitting Fuller with the pipe as Fuller lay in the bed. They both testified that during the ensuing struggle, the men moved from the bedroom into the hallway, where Freeman resumed striking Fuller with the pipe causing multiple lacerations. When Phillips arrived at the house shortly after the incident, Fuller was "bleeding from the top of his head."

Moreover, the physical evidence further corroborated Fuller's and Murphy's accounts. Blood was splattered and smeared on the floor, doorframe, and wall outside of the bedroom. The jackhammer pipe recovered from Freeman's vehicle also had a "red stain" on it, which Llosa suspected was blood. In addition, Fuller's injuries—three lacerations on his head, a broken arm, and a broken nose—corroborate his testimony that Freeman repeatedly struck him on the head and he blocked several additional blows with his arms.

Although Freeman summarily claims on brief that Fuller and Murphy "gave accounts of how the incident occurred to the first police officer on scene which materially conflicted with their trial testimony," he does not cite any example of such a conflict or explain why any conflict is "material." Regardless, "[t]he mere fact that a witness may have . . . given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Instead, "[p]otential inconsistencies in testimony are resolved by the fact finder." *Towler*, 59 Va. App. at 292. In this case, no inconsistency renders Fuller's or Murphy's testimony inherently incredible as a matter of law. *See Crump v. Commonwealth*, 20 Va. App. 609, 619 (1995) (holding that the inconsistencies in the testimony of two witnesses, the victim and her mother, did not "render the evidence" supporting the conviction "incredible as a matter of law"). Nor was the trial court required to believe or

disbelieve any witness' testimony "in whole." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (*en banc*). Indeed, "evidence with some element of untrustworthiness is customary grist for the [fact finder's] mill." *Curtis v. Commonwealth*, 11 Va. App. 28, 33 (1990) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). Thus, any alleged inconsistency in this case was "appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine." *Juniper*, 271 Va. at 415. Indeed,

> [w]hen the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree. So long as a witness deposes as to facts which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached . . . affects only the witness' credibility . . . . If the trier of the facts sees fit to base the verdict upon that testimony, there can be no relief in the appellate court.

*Dalton v. Commonwealth*, 64 Va. App. 512, 526 (2015) (alteration in original) (quoting *Simpson v. Commonwealth*, 199 Va. 549, 557-58 (1957)).

Freeman's conflicting testimony that he acted in self-defense does not alter the analysis. Although he claimed that during the affray he pulled Fuller's head down, striking it against the corner of the door and causing it to bleed, the trial court, as the fact finder "was at liberty to discount [Freeman's] self-serving statements as little more than lying to 'conceal his guilt,' and could treat such prevarications as 'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (citations omitted).

Here, the balance of the evidence, including the multiple lacerations on Fuller's head and the "red stain" on the metal pipe in Freeman's vehicle, contradicted Freeman's account. As the present case illustrates, a fact finder's "evaluations of credibility" often include "choosing between competing accounts offered by different witnesses." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011). In conducting such evaluations, the fact finder "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore*, 42 Va. App. at 213.

Moreover, the fact finder is entitled to reject a defendant's self-serving testimony and "to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). After weighing the evidence and considering the witness' competing accounts, the trial court credited the Commonwealth's evidence, finding that the physical evidence was inconsistent with Freeman's testimony.

For these reasons, the trial court's verdict was not plainly wrong or without evidence to support it. Accordingly, we affirm the judgment of the trial court.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed*.