COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and Lorish
Argued at Norfolk, Virginia

UNPUBLISHED

JESSIE ALAN DYER, II

MEMORANDUM OPINION* BY
v.      Record No. 0656-22-1                         JUDGE ROBERT J. HUMPHREYS
                                                                MAY 30, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Stephen J. Telfeyan, Judge

Samantha Offutt Thames, Senior Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Jessie Alan Dyer, II, of object sexual penetration of a child under the age

of thirteen, in violation of Code § 18.2-67.2(A)(1), and aggravated sexual battery of a child under

the age of thirteen, in violation of Code § 18.2-67.3. On appeal, Dyer challenges the sufficiency of

the evidence to support his convictions, arguing that the victim's testimony "was so inherently

incredible as to render it unworthy of belief."

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we "discard the evidence

of the accused in conflict with that of the Commonwealth, and regard as true all the credible

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

In the summer of 2015, Dyer lived with his mother, Heather Ballard, and three siblings, including his eight-year-old sister, L.G. Before that summer, Dyer had lived with his paternal grandparents in California and had not met L.G. Dyer returned to California at the end of the summer but moved into Ballard's home a few months later. L.G. testified that Dyer began sexually abusing her when she was eight years old. He made her "sit in his lap" as he inserted his fingers inside of her and touched her on "other places." The most recent abuse—which triggered the charges against Dyer—occurred when L.G. was twelve years old as she watched TV on the couch while her mother and two-month-old sister were "outside on the porch." Dyer "grabbed [L.G.] so [she] couldn't move," "made [her] sit in his lap," "stuck his fingers down [her] pants," and inserted them inside of her vagina. He then placed his other hand on her breast and told her to "start moving" her hips. L.G. "was scared," so she "shot up like a rocket," ran into her bedroom, and locked the door. L.G. stated that she took control of the situation by standing up and was disappointed with herself for not asserting control sooner.

L.G. initially did not report Dyer's ongoing abuse because she "didn't want to ruin [her] chance to have an older brother," and because Dyer had threatened to kill her, "tried to drown [her] twice," and she was "scared." Indeed, Ballard suspected that Dyer had watched "porn videos next to his siblings" and asked L.G. whether Dyer had "done anything" to her, but L.G. denied any abuse at that time.

L.G. ultimately disclosed the abuse during an argument with Ballard over L.G.'s use of social media without permission. L.G. became "really upset" and "blurted out" that Dyer "had sexually assaulted her" and touched her "inappropriately." The disclosure came only a couple days before Dyer was scheduled to return to Ballard's home. Although Ballard did not want Dyer to

return to her home because she was concerned for the safety of her other children, she initially was skeptical of L.G.'s allegation because it came when L.G. was in trouble for breaking Ballard's rules. Nevertheless, because Ballard had noticed that L.G. had been struggling with depression, insomnia, loss of appetite, and thoughts of suicide, she continued the conversation with L.G. and the "puzzle pieces started to fall into place." Ballard "immediately" took L.G. to a hospital for an evaluation.

Chesapeake Police Officer Austin Holmes briefly spoke to L.G. at the hospital. L.G. told Officer Holmes that Dyer began abusing her when she was "seven or eight" but gave no specific date or time. Ten days after the hospital exam, forensic evaluator Catherine Tricomi interviewed L.G. in a "child friendly" environment while officers watched in another room through a one-way glass. At trial, L.G. admitted that she told Tricomi that Ballard was not home during the "most recent" abuse and that a babysitter named Eric was watching them. L.G. told Tricomi that Dyer pulled her onto his lap when Eric "stepped out" to answer a phone call. L.G. explained the inconsistencies by stating that it had "been a while," and the incident when Eric was watching them "was a completely different situation," she "had gotten the days mixed up." L.G. also admitted that she had testified at Dyer's preliminary hearing that Eric, not Ballard, was home during the most recent abuse and that Dyer did not "say anything" during the abuse.

Tricomi testified that during her interview, L.G. reported that Dyer did not say anything during the most recent abuse. L.G. also told Tricomi that the abuse ended when Eric walked inside after his phone call, and Dyer "pushed her off of him." Tricomi confirmed that she spoke to L.G. about "more than one incident" and L.G. "sometimes struggled with details from incident to incident," a "very common" occurrence with children "recounting multiple incidents" of abuse.

Dyer moved to strike at the close the Commonwealth's case-in-chief and after the close of all the evidence, arguing that L.G.'s testimony had been impeached and was incredible. The circuit court denied both motions, concluding that Dyer had raised "a question of weight of the evidence

[and] credibility" for the jury to decide.  After argument by counsel, the jury convicted Dyer of object sexual penetration of a child under the age of thirteen and aggravated sexual battery of a child under the age of thirteen.

ANALYSIS

On appeal, Dyer argues that the evidence was insufficient as a matter of law to support his convictions.  "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *Lucas v. Commonwealth*, 75 Va. App. 334, 342 (2022) (quoting *McGowan*, 72 Va. App. at 521).

Dyer argues that the evidence was insufficient to sustain his convictions because L.G.'s testimony was "fundamentally inconsistent" and inherently incredible.  He notes that L.G. presented "two entirely different stories between preliminary hearing and trial" that differed in their accounts of who was watching the children during the most recent incident of abuse, whether Dyer spoke during the abuse, and how the abuse ended.  Next, Dyer contends that L.G.'s testimony was "improbable" because she would have "yell[ed] out for help" if the abuse occurred while her mother

was "mere feet away on the front porch," or if Eric "almost . . . walked in on" the abuse. Dyer further contends that L.G. "waited years" to report the abuse until a moment where she could "get out of trouble" for breaking "a cardinal family rule" and the Commonwealth provided no corroboration of her account. Finally, Dyer asserts that the Commonwealth's failure to locate Eric to further investigate L.G.'s claims "calls the . . . entire case . . . into question." We disagree.

"The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them." *Stith v. Commonwealth*, 65 Va. App. 27, 35 (2015) (quoting *Williams v. Commonwealth*, 56 Va. App. 638, 642 (2010)). Thus, it is well established that weighing and balancing witness testimony "is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). This Court "will not disturb" the trier of fact's "determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Id.* at 526 (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

L.G. consistently reported that Dyer had abused her by forcing her to "sit in his lap" while he inserted his fingers inside her vagina. Indeed, Dyer concedes in his opening brief that L.G. "remain[ed] consistent on who touched her and where." L.G.'s testimony conflicted with her prior statements only regarding matters tangential to the elements of the offenses, including who was caring for the children when the abuse occurred, whether Dyer spoke during the abuse, and how the

abuse ended. Moreover, Tricomi explained that it was "very common" for child victims to "struggle[] with details" when "recounting multiple incidents" of abuse. Thus, it was for the jury to weigh any inconsistences in L.G.'s statements "as part of the entire issue of witness credibility." *Juniper*, 271 Va. at 415.

Dyer points to nothing that renders L.G.'s testimony inherently incredible as a matter of law. Under settled jurisprudence "[t]he mere fact that a witness may have delayed in reporting knowledge of a case or given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Id.* Rather, such a circumstance "is appropriately weighed as part of the entire issue of witness credibility, *which is left to the jury to determine*." *Id.* (emphasis added).

Similarly, a victim's failure to immediately report sexual abuse does not render her testimony inherently incredible as a matter of law, especially when the victim provides "a credible explanation" for the delay. *Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005) (quoting *Willis & Bell v. Commonwealth*, 218 Va. 560, 563 (1977)). To be sure, this Court has held that a "victim's youth, fright and embarrassment certainly provided the jury with an acceptable explanation for his behavior." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991). The jury is "entitled to attribute such significance as it deem[s] appropriate to [a] delay." *Id.* (citing *Hammer v. Commonwealth*, 207 Va. 159, 162 (1966)). The record demonstrates that L.G. reported the subject act of abuse within about a month of when it occurred. She explained that she did not report earlier instances of abuse because she "didn't want to ruin [her] chance to have an older brother." As the abuse continued, she was "scared" because Dyer had threatened to kill her and "tried to drown [her] twice." *See Love v. Commonwealth*, 18 Va. App. 84 (1994) (holding that thirteen-year-old victim's seven-year delay in reporting ongoing sexual abuse did not render her testimony inherently incredible). Thus, the jury was entitled to consider L.G.'s

delay in reporting in the context of her young age and the surrounding circumstances and was free to "attribute such significance" to the delay as it deemed appropriate. *Corvin*, 13 Va. App. at 299.

Finally, our jurisprudence recognizes that "[t]here is no requirement of corroboration" in sexual abuse cases because "the 'clandestine nature' of sexual offenses," means that "'[t]here are seldom any witnesses'" other than the perpetrator and the victim. *Nottingham v. Commonwealth*, 73 Va. App. 221, 229 (2021) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). Thus, "the victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction." *Id.* Moreover, Dyer's argument notwithstanding, other evidence corroborated L.G.'s testimony. Even before L.G. disclosed the abuse, Ballard had been concerned that Dyer might have exposed his siblings to pornography and abused L.G. in some manner. In addition, Ballard had noticed that L.G. had been struggling with depression, insomnia, and thoughts of suicide, so the "puzzle pieces started to fall into place" when L.G. disclosed the abuse.

"When the law says that it is for the jury to judge the credibility of a witness, [the issue] is not a matter of degree." *Simpson v. Commonwealth*, 199 Va. 549, 557 (1957). "So long as a witness deposes as to facts, which, if true, are sufficient to maintain their verdict, then the fact that [the witness'] credit is impeached by . . . contradictory . . . statements affects only [the witness'] credibility . . . [and] the weight and sufficiency of [the] testimony." *Id.* "If the jury . . . see[s] fit to base their verdict upon [that] testimony, . . . there can be *no relief* in the appellate court." *Id.* (emphasis added). Here, L.G. consistently testified to facts that established the elements of the charged offenses, and the jury accepted that testimony.

CONCLUSION

The Commonwealth's evidence was competent, not inherently incredible, and sufficient to convict Dyer of object sexual penetration of a child under the age of thirteen and aggravated sexual battery of a child under the age of thirteen. Accordingly, we affirm Dyer's convictions.

*Affirmed.*